Robert J. SACRAMONA,
Plaintiff, Appellant,

v.

BRIDGESTONE/FIRESTONE, INC., and
The Budd Company, Defendants,
Appellees.

No. 96–1345.

United States Court of Appeals,
First Circuit.

Heard Nov. 6, 1996.

Decided Feb. 13, 1997.

445

Michael K. Gillis with whom Gillis & Bikofsky, P.C., Newton Center, MA, was on briefs for appellant.

Francis H. Fox with whom John R. Skelton and Bingham, Dana & Gould L.L.P., Boston, MA, were on brief for appellee Bridgestone/Firestone, Inc.

Edward M. Kay with whom Michael W. Duffy, P. Scott Ritchie, Clausen Miller, P.C., Chicago, IL, Robert M. Spence, Assistant General Counsel,; Mark R. Karsner and Karsner & Meehan, P.C., Taunton, MA, were on brief for appellee The Budd Company.

Before SELYA, Circuit Judge, ALDRICH, Senior Circuit Judge, and BOUDIN, Circuit Judge.

BOUDIN, Circuit Judge.

Robert Sacramona, the plaintiff in this diversity action, appeals from the district court's grant of summary judgment against him. His claims arose from an accident that occurred when Sacramona sought to mount and inflate a tire manufactured by defendant Bridgestone/Firestone, Inc. on a wheel manufactured by defendant, The Budd Company. The appeal is essentially a challenge to the district court's rulings on the destruction or loss of evidence and resulting prejudice to the defendants.

The facts are as follows. On May 4, 1988, a customer drove his van into the Economy Mobil gas station for repair of a leaking tire. Sacramona, the station's new manager, removed the tire and decided to replace rather than repair it. Because the station did not have an appropriate new tire, Sacramona selected a used, 16-inch tire from a rack of tires at the station as a temporary replacement, intending later to get a new tire for the customer.

The replacement tire bore warnings that it was to be used only with a 16-inch wheel. Sacramona later admitted that he did not check the diameter of the wheel rim; he said that he chose a 16-inch tire because the tire that he removed was also 16 inches. But the replacement tire apparently did not fit the wheel, which Sacramona now says was 16-1/2 inches. After Sacramona struggled to mount the tire—using a tire mounting machine and lubricant, striking the tire with a hammer, and bouncing it on the ground—the tire allegedly exploded as he again attempted to inflate it, causing him numerous injuries.

Sacramona was taken to the hospital by ambulance. Another service station employee put the damaged replacement tire on the wheel without inflating it, and the customer drove back home very slowly on the uninflated tire. The customer subsequently had the wheel and damaged tire removed from his van and left them unprotected in his outdoor yard. In August 1988, Sacramona's attorney obtained the tire and wheel.

Around February 1, 1989, the attorney gave both the tire and wheel to an expert consulting engineer, Dyer Carroll, who examined them and then sent them to Sacramona's liability expert, Dr. Alan Milner, on September 30, 1991. In the meantime, on May 3, 1991, Sacramona filed his complaint in this case, one day before the three-year statute of limitations expired, asserting tort and warranty claims. His theory is this: that the automotive industry knew that there was a risk of harm from mismatching tires and wheels, and that the wheel, tire, or both could have been designed—over and above the warnings on the tire—to reduce the risk that such a dangerous mismatch would occur.

By the time of the lawsuit, the Mobil station had been sold and many of its contents were gone, including the original leaking tire, the mounting machine, and various safety or equipment manuals and documents. In addition, during his deposition, Milner said that the wheel had undergone a "somewhat destructive" examination and that he understood from Sacramona's lawyer that Carroll had conducted an extensive cleaning of the

wheel. It was thus impossible to check for markings on the inside of the wheel that might have revealed whether (as Sacramona claimed) the original leaking tire had been a 16–inch tire mismatched with a 16–1/2–inch wheel.

After discovery, the defendants moved for summary judgment on several grounds, asserting *inter alia* that critical evidence had been destroyed in the cleaning of the wheel. In opposition, Sacramona attached a brief affidavit from Carroll denying that he had destroyed such evidence.[1] The district court ruled that evidence of the wheel should be excluded, finding that defendants' "experts have been deprived of the opportunity to examine relevant, possibly dispositive evidence before its material alteration." The trial judge treated the wheel's exclusion as fatal to both the negligence and warranty claims.

The district court also granted summary judgment to the defendants on Sacramona's warranty claims on an independent ground. Sacramona had not notified Firestone of his claims until three years after the accident; and Budd did not get notice for three more months (service of the complaint having been delayed). The district court ruled that the defendants had been prejudiced by this delay because evidence had been lost, and that the warranty claims were therefore barred by Mass.Gen.Laws ch. 106, § 2–318.

Sacramona has now appealed, challenging both rulings: the dismissal of both claims because of damage to the wheel and the dismissal of the warranty claim for prejudicial delay. We address each asserted error in turn, applying the standard of review fitting the specific issue. Broadly speaking, propositions of law are examined *de novo*, findings of fact are reviewed under the clear error standard, and most remaining issues (*e.g.*, applying multiple factors to known facts) are tested for "abuse of discretion." *See generally United States v. Wilson*, 798 F.2d 509, 512 (1st Cir.1986).

1. Under settled authority, the district court has inherent power to exclude evidence that has been improperly altered or damaged by a party where necessary to prevent the non-offending side from suffering unfair prejudice. *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir.1992); *Headley v. Chrysler Motor Corp.*, 141 F.R.D. 362, 365 & n. 13 (D.Mass.1991). Although deterrence may play a role, the primary aim is remedial, at least absent willful destruction. This power is a companion to, but somewhat different in effect from, the doctrine that permits an adverse inference from one side's destruction of evidence. 22 Charles Alan Wright & Kenneth W. Graham, *Federal Practice and Procedure: Evidence* § 5178, at 153–59 (1978).

Sacramona's first argument against the exclusion of the wheel on grounds of prejudicial damage is that the district court "did not weigh the evidence in the light most favorable to the non-moving plaintiff" and therefore the issue had to be submitted to the jury. Sacramona says that a factual dispute exists as to whether any such damage occurred, "particularly in light of the sworn deposition testimony of Dyer E. Carroll, ... who stated that he never scraped any evidence from the wheel or cleaned it with any abrasive material."

The request for a jury rests on a misunderstanding. It is familiar law that the district judge decides most preliminary factual issues that arise in determining the admissibility of evidence. Fed.R.Evid. 104(a). The main exception is that under Fed.R.Evid. 104(b), issues of conditional relevance are normally submitted to the jury. Sacramona invokes the latter rule, arguing that the issue whether the wheel had been damaged was an issue of conditional relevance that should have been submitted to the jury.

The district court said that the wheel was being excluded, in the alternative, both as a sanction for damage to it and because the damage made the wheel irrelevant. But in fact the alleged damage to the wheel's inner

---

1. Carroll's own deposition testimony, apparently not called to the district court's attention at this stage, revealed that Carroll's son had assisted in the cleaning but denied that anyone had destroyed evidence.

surface merely prevented one possible use of the wheel—to show that the original tire was or was not 16 inches. The wheel, or testimony about it, remained relevant to prove whether the wheel itself was 16–1/2 inches, which was one critical premise of Sacramona's mismatch theory. Thus, the only basis for exclusion of the wheel was prejudicial damage, an issue that Rule 104(a) reserves to the trial judge.

There is more force to Sacramona's claim that the district court may have erred in deciding that Carroll had cleaned the wheel. In moving for summary judgment, the defendants relied upon several different admissions by Milner in his deposition, adding up to the following: that the inside of the wheel had been cleaned, removing the possibility of recovering useful evidence; that Sacramona's counsel had identified Carroll as the source of the cleaning; and that Milner had sought to obtain photographs of the wheel prior to cleaning but none had been taken by Carroll.

In opposition, Sacramona countered with a brief affidavit of Carroll that he had not cleaned any substantial portion of the inside of the wheel. Sacramona argued on this basis (mistakenly) that the issue was one for the jury. But in any event the affidavit was not much of an answer: Milner said that the inside of the wheel had been cleaned; and whether or not Carroll had done it, the wheel had admittedly been in the custody of the plaintiff's counsel or one of his experts since it was recovered from the customer's backyard.

It is thus not entirely surprising that the district court ruled that the plaintiff was responsible for the damage. At this point, Sacramona offered new evidence: on his motion for reconsideration, a new affidavit was filed by Milner, saying that he had been misunderstood and had not testified that the inside of the wheel had been cleaned. Sacramona's counsel also filed an affidavit, which generously could be read to assert that his law firm had given the wheel to Carroll and retrieved it unaltered.

But Milner's affidavit did not squarely dispute that the wheel had been cleaned; and in denying that Carroll had done the cleaning, the Milner affidavit squarely contradicted his own prior deposition without explanation. As for counsel's affidavit, it made no effort to deny or explain Milner's deposition testimony that counsel had told Milner that Carroll had cleaned the wheel. Taking the matter on the deposition testimony and affidavits, we are not prepared to rule that the district court's finding of damage by plaintiff was clear error.

■ In our view, it would have been sounder to hold an evidentiary hearing on the issue of damage and responsibility for it, at least when on reconsideration it became clear that the issue was murky. If at this stage Sacramona had squarely requested such a hearing, it might well have been an abuse of discretion to deny it. *See General Contracting & Trading Co. v. Interpole, Inc.,* 899 F.2d 109, 115 (1st Cir.1990). But there is no single mode of resolving factual disputes under Rule 104(a), and we will not ordinarily reverse on a procedural objection never made. *Aoude v. Mobil Oil Corp.,* 892 F.2d 1115, 1120 (1st Cir.1989).

■ Sacramona's next argument is that if there was destruction, it was not done in bad faith. Certainly bad faith is a proper and important consideration in deciding whether and how to sanction conduct resulting in the destruction of evidence. But bad faith is not essential. If such evidence is mishandled through carelessness, and the other side is prejudiced, we think that the district court is entitled to consider imposing sanctions, including exclusion of the evidence. *See Nation–Wide Check Corp., Inc. v. Forest Hills Distrib., Inc.,* 692 F.2d 214, 219 (1st Cir. 1982); *Unigard,* 982 F.2d at 368 n. 2; *Headley,* 141 F.R.D. at 365 & nn. 13–14.

■ Less need be said about Sacramona's further claim that any evidence lost from damage to the wheel was evidence that could only have favored the plaintiff. Yes, if the wheel had been undamaged, it might have helped Sacramona by showing marks indicating that the original leaking tire had been 16 inches. But the absence of such marks, had the tire not been cleaned, would have helped the defendants by suggesting the opposite. Plainly, this is not a case in which we can say

that the lost evidence could only have helped Sacramona.

2. Sacramona's final argument addressed to the sanction presents a quite different and more troubling concern. In Sacramona's petition for reconsideration, he argued (among many other points) that a proportionate sanction for damage to the wheel would merely prevent Sacramona from arguing that the original tire was 16 inches. He also asserted that his design defect claim remained viable, even if no 16–inch tire had been on the wheel when it was brought into the service station.

The defendants' response in the district court, renewed on appeal, is that Sacramona's theory of design defect depends on a showing that the injury in this case resulted from an attempt to place a 16–inch tire on a 16–1/2–inch wheel. And, say the defendants, the exclusion of the wheel (as a sanction for damaging the evidence) also should prevent any proof that the wheel was 16–1/2 inches. In the district court's own words at the time of its original ruling:

> As a result of this exclusion [of the wheel], plaintiff will be unable to produce any evidence or testimony that a 16.5 inch wheel was involved in the accident or that it was defective. Because Sacramona's claim is premised entirely upon his unprovable allegation that a 16–inch tire was in dynamic service with a 16.5–inch wheel, there is no genuine issue of material fact to support Sacramona's allegations and, consequently, defendants are entitled to summary judgment.

The problem with this reasoning, as we see it, is that it gives the defendants a sanction that goes well beyond what is necessary to cure the prejudice. Accepting the district court's finding of damage by plaintiffs to the interior surface of the wheel, the defendants were prejudicially hindered in rebutting Sacramona's claim that he had removed a 16–inch tire from the wheel. A commensurate sanction might have included an order barring Sacramona from claiming that the original tire was 16 inches.

But neither the district court nor the defendants explain why any broader sanction was needed to undo the harm caused by the wheel's cleaning. In fact, one defendant apparently urged the more limited sanction—precluding Sacramona's claim that the original tire was 16 inches—as an alternative to dismissal. And there is no finding that the damage was willfully intended to deprive the defendants of helpful evidence, arguably a basis for a sanction that does more than undo the harm.

Nevertheless, a narrowing of the sanction would not have saved the negligence claim against the defendants. Under Massachusetts law, contributory negligence by the victim is a bar to any recovery if it represents more than 50 percent of the total negligence on both sides. Mass.Gen.Laws ch. 231, § 85. Whether or not the wheel or tire might have been more safely designed, it would be patent negligence by the plaintiff to select a 16–inch tire as a replacement without some good reason to think that the wheel was also 16 inches.

Sacramona's only asserted basis for selecting the 16–inch replacement was that the leaking tire taken from the wheel was a 16–inch tire, presumably based on its labeling. If Sacramona were precluded from making that claim, a finding of serious negligence on Sacramona's part could hardly be avoided. Indeed, Sacramona would appear to be doubly negligent: first in selecting the 16–inch tire without any basis for doing so and, second, in his repeated efforts to seat and inflate the tire even when failure showed that something was wrong. Thus, even if the sanction were limited as Sacramona suggests, his negligence claim would still fail. We therefore affirm summary judgment on this claim.

■ The more limited sanction, however, would not necessarily preclude the warranty claim. Contributory negligence is not an automatic defense to a warranty claim under Massachusetts law. *Colter v. Barber–Greene Co.*, 403 Mass. 50, 525 N.E.2d 1305, 1313–14 (1988). This, in turn, brings us to the district court's alternative ground for dismissing the warranty claim.

■ 3. Neither side disputes that Massachusetts law embodies a notice requirement for warranty claims. As the rule has been formulated, a plaintiff must give reasonably

prompt notice of his warranty claim to the potential defendant; if he fails to do so, and the defendant is thereby prejudiced, the warranty claim is barred even if it is brought within the statute of limitations. Although merely implied by a Massachusetts statute, Mass.Gen.Laws ch. 106, § 2–318, case law has fleshed out the notice requirement. *Castro v. Stanley Works*, 864 F.2d 961, 963 (1st Cir.1989); *Cameo Curtains, Inc. v. Philip Carey Corp.*, 11 Mass.App.Ct. 423, 416 N.E.2d 995, 998 (1981).

■ Whether notice is unreasonably delayed can be a thorny issue but, in this case, undue delay is obvious and Sacramona does not even argue to the contrary. And assuming an unreasonable delay in notice, the prejudice showing is relatively easy: it is enough that the delay may well have deprived the defense of useful evidence. No showing is required that lost evidence would inevitably have altered the outcome. *Castro*, 864 F.2d at 964. In short, the notice requirement has real teeth.

The reason for this rule in Massachusetts is that warranty liability combines features that place potential defendants at serious risk: strict liability, lack of privity, and a statute of limitations that may run not from the sale but from the injury. *Cameo Curtains*, 416 N.E.2d at 997. As a counterweight, the requirement of prompt notice allows the defendant to gather evidence in timely fashion; without such notice, a defendant could easily be surprised by a lawsuit many years after selling its products. *Cf. Castro*, 864 F.2d at 963.

■ In the present case, notice was plainly delayed; and the district court found that the requisite prejudice had been shown by the defendants. On appeal, Sacramona contests this latter finding on two related grounds: first, that prejudice, in this context, is an issue for the jury under Massachusetts law; and, second, that the district court in finding prejudice resolved disputed issues on summary judgment without giving the bene-

fit of doubts and inferences to the non-moving party.

Massachusetts does treat the defense as a jury issue, *Henrick v. Coats Co., Inc.*, 17 Mass.App.Ct. 976, 458 N.E.2d 773, 774–75 (1984), and—regardless of whether this practice would be binding on a federal court [2]— we ourselves treat as a jury issue fact questions presented by a statutes of limitation defense, *Villarini–Garcia v. Hospital Del Maestro, Inc.*, 8 F.3d 81, 84 (1st Cir.1993), which offers an analogy to the notice requirement. But the question remains whether a reasonable jury would still have been compelled to find prejudice here.

We review such determinations *de novo*, assuming that the jury would credit the nonmovant's version of events. *E.g., Continental Ins. Co. v. Arkwright Mutual Ins. Co.*, 102 F.3d 30, 33 n. 4 (1st Cir.1996). Yet, even if the jury found that Carroll had not caused prejudicial damage to the wheel, the loss of the remaining evidence would be beyond dispute: the original leaking tire, the other wheels and tires on the customer's van, and the equipment in the garage, including the tire changer, the pressure gauge, and the manuals. This material might have been salvaged if Sacramona had given prompt notice to the defendants after the accident; instead, he waited three years.

The original tire itself, without more, could have been very helpful evidence. If it had proved to be 16–1/2 inches, this might have persuaded the jury that the *cause* of the accident was Sacramona's own conduct rather than any design defect. *See Colter*, 525 N.E.2d at 1312. Of course, since contributory negligence is not a defense to the warranty claim, the jury would have had some latitude. But to show prejudice based on a lack of notice, the defendants needed only to prove that evidence was lost that might well have helped them, and that they have done.

In fact, on appeal Sacramona makes relatively little effort to show how a jury could have failed to find prejudice. His factual

---

**2.** The extent to which state jury practice binds a federal court in a diversity case involves consideration of the *Erie* doctrine, the Rules of Decision Act, and the Seventh Amendment. *See generally Byrd v. Blue Ridge Rural Elec. Coop.*, 356 U.S.

525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958); *Herron v. Southern Pacific Co.*, 283 U.S. 91, 51 S.Ct. 383, 75 L.Ed. 857 (1931). We need not pursue the subject here.

appraisal of lost evidence is confined to question whether the wheel was damaged; for the rest, his brief simply asserts that prejudice is a jury issue. Indeed, it is—but only where a reasonable jury could decide the issue either way. Here, given the low threshold for the showing and the admitted loss of evidence, the outcome on this issue was inevitable.

*Affirmed.*