<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 UNITED STATES COURT OF APPEALS
                     FOR THE FIRST CIRCUIT
                      ____________________

No. 97-1365

                    DIANA COLLAZO-SANTIAGO,

                     Plaintiff - Appellee,

                               v.

                      TOYOTA MOTOR CORP.,

                     Defendant - Appellant.

                      ____________________

          APPEAL FROM THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF PUERTO RICO

        [Hon. Daniel R. Domnguez, U.S. District Judge]

                      ____________________

                             Before

                    Torruella, Chief Judge,

                      Cyr, Circuit Judge,

and DiClerico, Jr., District Judge.

                     _____________________

   Jay M. Smyser, with whom Antonio Gnocchi Franco was on brief
for appellant.
   Bowman and Brooke LLP, Hildy Bowbeer and Hugh F. Young, Jr. on
brief for Product Liability Advisory Council, amicus curiae.
   Jorge Miguel Suro Ballester for appellee.

                      ____________________

                         July 9, 1998
                                
                     ____________________

 DiClerico, District Judge.  The plaintiff-appellee, Diana
Collazo-Santiago, received a jury verdict against the defendant-
 appellant, Toyota Motor Corporation, in this strict products
liability case.  On appeal, the defendant raises, inter alia, the
following arguments:  the district court applied an incorrect
legal standard; the plaintiff failed to establish an element of
 her case; and the district court erred in its denial of the
   defendant's motion to dismiss because of the plaintiff's
spoliation of evidence.  Having considered the arguments of the
defendant and of the amicus brief filed by the Products Liability
                 Advisory Council, we affirm.
                                
Background
    On August 13, 1994, the plaintiff was driving a 1994 Toyota
Corolla when she was involved in a high speed multi-automobile
accident.  Struck initially from behind, her automobile was
propelled forward into the vehicle in front of it and the air
bags in her car deployed.  The plaintiff suffered abrasions to
her face that resulted in second degree burns.   
    In January 1995, the plaintiff filed this action against the
defendant asserting, in part, that her abrasions were caused by
the air bags in the automobile, that the air bags were
defectively designed, and that the defendant was liable under a
theory of strict products liability.  Confronted with an open
question of Puerto Rico strict products liability law, the
district court applied a rule of law under which a plaintiff
prevails in a design defect case if the plaintiff establishes
that the product's design proximately caused her injury and the
defendant fails to establish that the benefits of the design
outweighed its risks.   
    Prior to trial, the defendant asserted that the plaintiff's
failure to preserve the automobile for the defendant's inspection
was prejudicial and warranted dismissal of the plaintiff's
complaint.  The district court denied the motion to dismiss.    
    At trial, the plaintiff testified that she had been wearing her
seat belt at the time of the accident and that she did not come
into contact with the steering wheel or any other part of the
interior of her car.  Her dermatologist testified that her
injuries were second degree burns due to abrasions and that they
were inconsistent with a traumatic impact with a blunt object.  
Although the plaintiff did not supply her own expert witness on
air bags, she elicited testimony from the defendant's expert that
abrasions and burns had been associated with air bag deployment
in professional literature.  The defendant's expert witness also
testified that despite the severe injuries that may result from
air bag deployment, they have significantly reduced injuries and
fatalities from car accidents.  Moreover, he opined that there is
no feasible alternative design for the air bags that would reduce
the danger posed by their high speed deployment while maintaining
their efficacy.
    The jury returned a $30,000 verdict for the plaintiff.  On
appeal, the defendant contests, inter alia:  (1) the district
court's formulation of Puerto Rico strict products liability law
for design defect cases; (2) the sufficiency of the plaintiff's
evidence; and (3) the district court's spoliation ruling.  The
court discusses these claims seriatim.

                          Discussion
        I.  Strict Products Liability Under Puerto Rico Law
    The parties do not dispute that Puerto Rico law controls the
issue of strict products liability for a design defect in this
case.  See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).  
The Puerto Rico legislature has yet to codify the Commonwealth's
law governing strict products liability.  See Rivera Santana v.Superior Packaging, Inc., No. RE-89-593, __ P.R. Offic. Trans.
__, slip op. at 5 n.4 (P.R. Dec. 9, 1992).  Although the Supreme
 Court of Puerto Rico has not explicitly pronounced the legal
standard governing design defect cases, the district court denied
the defendant's motion to certify the question to the Supreme
 Court of Puerto Rico, finding the path that court would take
reasonably clear.  See Collazo-Santiago v. Toyota Motor Corp.,
937 F. Supp. 134, 138 (D.P.R. 1996).  The defendant alleges that
the district court applied an improper rule of law.  The court
 reviews this question de novo.  See MCI Telecomms. Corp. v.
   Exalon Indus., Inc., 138 F.3d 426, 428 (1st Cir. 1998).
    "Absent controlling state court precedent, a federal court
sitting in diversity may certify a state law issue to the state's
highest court, or undertake its prediction 'when the course [the]
 state courts would take is reasonably clear.'"  Vanhaaren v.
State Farm Mut. Auto. Ins. Co., 989 F.2d 1, 3 (1st Cir. 1993)
(quoting Porter v. Nutter, 913 F.2d 37, 41 n.4 (1st Cir. 1990)
(itself quoting Bi-Rite Enters., Inc. v. Bruce Miner Co., 757
F.2d 440, 443 n.3 (1st Cir. 1985))).  This court agrees with the
district court that the likely direction of the Supreme Court of
              Puerto Rico is reasonably evident.
    Since its adoption of the doctrine of strict products liability
in Mendoza v. Cervecera Corona, Inc., 97 P.R.R. 487, 499 (1969),
the Supreme Court of Puerto Rico has embraced the formulation of
that doctrine first set forth by the California Supreme Court in
Greenman v. Yuba Power Products, Inc., 377 P.2d 897, 901 (Cal.
 1962).  As it has revisited the issue of Puerto Rico strict
 products liability law, the Supreme Court of Puerto Rico has
consistently relied upon California Supreme Court precedent.  In
 Montero Saldaa v. American Motors Corp., R-77-203, __ P.R.
Offic. Trans. __, slip op. (P.R. May 31, 1978), for example, the
Supreme Court of Puerto Rico relied upon California Supreme Court
  precedent in rejecting the requirement that the defect be
 "unreasonably dangerous to the user or consumer;" in finding
 strict liability applicable to both manufacturing and design
 defect cases; and in holding principles of comparative fault
applicable to strict products liability cases.  See id. at 8, 10-
12.  Again, in Rivera Santana v. Superior Packaging, Inc., the
Supreme Court of Puerto Rico relied extensively on Greenman and
other California cases as it identified three types of product
   defects that could result in strict products liability:  
manufacturing defects, design defects, and defects arising from
inadequate warnings or instructions.  See slip op. at 8.  It then
 explicitly adopted Greenman's definition of a manufacturing
defect and provided a legal standard for inadequate warnings or
instructions drawn from California Supreme Court cases.  See id.at 8, 10.  Indeed, in Rivera Santana, the Supreme Court of Puerto
Rico acknowledged its embrace of California's doctrine of strict
products liability, stating the following: "Both [Mendoza and
 Montero Saldaa] cited with approval the strict liability in
    torts rule set down by the California Supreme Court in
                   [Greenman]."  Id. at 6.  
    The Supreme Court of Puerto Rico's first extended discussion of
strict products liability for design defects was also in Rivera
Santana.  In the decision, the court referred exclusively to a
 two-part test articulated by the California Supreme Court in
Barker v. Lull Engineering Co., 573 P.2d 443 (Cal. 1978).  SeeRivera Santana, slip op. at 9, 10.  Pursuant to the test, a
successful plaintiff in a design defect case must establish that:
    1) "the product failed to perform as safely as an ordinary
    consumer would expect when used in an intended or reasonably
      forseeable manner[,]" or . . . 2) "the product's design
     proximately caused his injury and the defendant fails to
    establish, in light of the relevant factors, that, on balance,
    the benefits of the challenged design outweigh the risk of danger
                     inherent in such design."
                                
        Id. at 9 (quoting Barker, 573 P.2d at 455-56).
    Although in Rivera Santana the court stopped short of explicitly
adopting the two-part test, in Aponte-Rivera v. Sears Roebuck,
Inc., the Supreme Court of Puerto Rico revisited the issue of
strict products liability for design defects.  See Nos. RE-92-
436, CE-92-537, __ P.R. Offic. Trans. __, slip op. (P.R. Feb. 24,
1998).  In Aponte-Rivera, which was decided after oral argument
was heard in this case, the Supreme Court of Puerto Rico provided
                  that a design is defective
    when a product fails to perform as safely as would be expected by
    an ordinary user when the product is being used for its intended
    use or for which it could forseeably be used, or when the product
    design is the proximate cause of the damages and defendant fails
    to show that in the balance of interests the benefits of the
    design in question surpass the inherent risks of danger in the
                              design.
                                
Id. at 10, 29 n.9 (citing Rivera).  Although the adoption of the
two-part test is not necessary to the outcome of Aponte-Rivera,
the court finds that taken together, the case law cited above
provides a "reasonably clear" indication of the direction of the
Supreme Court of Puerto Rico.  The court therefore holds that the
district court's adoption of the two-part test articulated in
Barker and recited in Rivera Santana and Aponte-Rivera accurately
reflects the Supreme Court of Puerto Rico's likely decision if
              confronted with the issue at hand.
    In its application of the two-part test for a design defect, the
 district court required the plaintiff to prove that she was
  injured and that the design was the proximate cause of her
injuries.  At this point, the burden shifted to the defendant to
establish that the benefits of the design outweighed its risks.  
As identified in Barker, factors to be considered by the jury in
conducting this evaluation are
    the gravity of the danger posed by the challenged design, the
    likelihood that such a danger would occur, the mechanical
    feasibility of a safer alternative design, the financial cost of
    an improved design, and the adverse consequences to the product
    and to the consumer that would result from an alternative design.

Barker, 573 P.2d at 455; see also Rivera Santana, slip op. at 9
n.9.  Insofar as the court anticipates that the Supreme Court of
Puerto Rico would adopt the two-part test, we also anticipate
that the feasibility of a safer alternative design would be a
factor relevant to the defendant's burden to prove that the
design's benefits outweighed its risks.  See Barker, 573 P.2d at
455.
    Both the amicus brief submitted by the Product Liability Advisory
Council and the defendant's brief seek to persuade this court
either (1) that a rule of law more closely resembling the rule of
law in the Restatement (Second) of Torts  402A (1965) or the
Restatement (Third) of Torts: Products Liability (proposed final
draft, April 1, 1997) (adopted May 20, 1997) should be adopted,
or (2) that additional elements should be grafted upon the
plaintiff's prima facie case.  However, in explicating state law
for the purposes of a diversity action, "[o]ur function is not to
formulate a tenet which we, as free agents, might think wise, but
to ascertain, as best we can, the rule that the state's highest
tribunal would likely follow."  Porter, 913 F.2d at 40-41
(alteration in original) (citations omitted).  The court finds,
as stated above, that the rule of law the Supreme Court of Puerto
Rico would adopt is reasonably clear.  The district court did not
err in its conclusion.

    II.  Sufficiency of the Evidence
    The defendant challenges the sufficiency of the evidence adduced
by the plaintiff to establish the element of causation.  At
trial, the district court initially reserved judgment on the
defendant's motions for judgment as a matter of law pursuant to
Federal Rule of Civil Procedure 50(a), and later rejected the
defendant's renewed Rule 50(b) motion.
    On appeal, we review a district court's grant or denial of a
defendant's motion for judgment as a matter of law de novo.  SeeMcMillan v. Massachusetts Soc'y for the Prevention of Cruelty to
Animals, 140 F.3d 288, 299 (1st Cir. 1998).  "The standard of
review for motions for judgment as a matter of law requires us to
view the evidence 'in the light most favorable to the non-moving
party, drawing all reasonable inferences in its favor.'"  Id.(quoting Morrison v. Carleton Woolen Mills, Inc., 108 F.3d 429,
436 (1st Cir. 1997)).  "A verdict may be directed only if the
evidence, viewed from this perspective, 'would not permit a
reasonable jury to find in favor of the plaintiff[] on any
permissible claim or theory.'"  Andrade v. Jamestown Hous. Auth.,
82 F.3d 1179, 1186 (1st Cir. 1996) (alteration in original)
(quoting Murray v. Ross-Dove Co., 5 F.3d 573, 576 (1st Cir.
1993)).
    At trial, the plaintiff testified on cross-examination that her
seat was in a normal upright position in the car and that she was
using her seat belt at the time of the accident.  In response to
slowing cars in front of her, the plaintiff applied her brakes
but was struck from behind, at which point she collided with the
car in front of her.  She was sitting in a normal position at all
times during the accident.  When her car came to a stop, the
cabin was filled with a smoke-like substance and both air bags
had deployed.  The plaintiff felt a burning sensation on her face
immediately after the accident, and her lips and face began to
swell.  The plaintiff attributed these injuries to the air bags;
she "knew that [she] hadn't hit [herself] with anything else" as
she did not perceive any impact between her body and anything
else in the car.  Trial Tr. of July 30, 1996 at 41, 44, 59-60
(hereinafter "Tr. of 7/30").   
    The plaintiff also presented the testimony of Dr. Charneco,
unchallenged as an expert in the field of dermatology, who
treated the plaintiff two days after the accident.  His diagnosis
was "second a [sic] degree burn caused by abrasions."  Tr. of
7/31 at 10.  He also testified that the injury was not consistent
with an impact with a blunt object as there was no hematoma.
    Finally, the plaintiff elicited the following testimony from the
defendant's expert witness:  (1) the witness had previously been
employed for over six years by the defendant in its legal
department as a mechanical engineer consulting with attorneys
regarding lawsuits; (2) the witness was at the time of trial an
independent consultant, but had testified for the defendant or
its associated corporations thirty-six times in the preceding two
years; (3) the thirty-six cases represented approximately eighty
percent of the cases that the witness had testified in over the
preceding two years; (4) the witness was being paid $215 an hour
by the defendant; (5) the deployment of the air bag, "the opening
process where the bag punches out," occurs very rapidly, with
considerable force at high speed, id. at 38; (6) the deployment
of the air bag could cause severe injury, including but not
limited to, death, head injury, broken bones, and severe
bruising; (7) the witness was aware of literature that associated
air bags with abrasions and friction burns, see id. at 37; and
(8) there was no minimum distance the driver of an automobile
could be from the air bag at which there would be no risk of
injury from deployment, see id. at 50-52.  The witness also
testified that given the constraints surrounding the functioning
of the air bag, there was no way to slow its deployment, to
cushion or block the driver, and to have it deflate quickly.  Seeid. at 101.
    From the evidence adduced by the plaintiff, a reasonable jury
could find that it was more likely than not that the deployment
of the air bags caused the friction burns on the plaintiff's
face.  At this point, the burden shifted to the defendant to
establish that the benefits of the design outweighed its risks.  
In this regard, the court rejects the argument that the jury was
unreasonable in finding that the risks of the design outweighed
its benefits.  The jury was not required to believe the testimony
of the defendant's expert witness regarding the feasibility of an
alternative design or the other Barker factors because the
plaintiff adduced sufficient evidence for the jury to find that
the defendant's expert was an interested witness.  See 9A Charles
Wright & Arthur Miller, Federal Practice and Procedure  2527 at
286 (1995) (a "jury is required to believe, and the judge
therefore may accept as true on a motion, uncontradicted and
unimpeached evidence from disinterested witnesses"); Sonnentheilv. Christian Moerlein Brewing Co., 172 U.S. 401, 408 (1899)
("[T]he mere fact that the witness is interested in the result of
the suit is deemed sufficient to require the credibility of his
testimony to be submitted to the jury as a question of fact").  
The court concludes that the evidence was sufficient for the jury
to find in the plaintiff's favor.

    III.  Spoliation
    After the plaintiff's accident, but prior to the defendant's
inspection of the subject vehicle, the plaintiff's insurance
company declared the plaintiff's vehicle a total loss and sold it
at public auction.  Although the purchaser of the automobile was
recorded, the parties were unable to locate the new owner of the
vehicle.  The defendant therefore moved to have the case
dismissed on the ground that it was prejudiced by its inability
to inspect the automobile.  In denying the defendant's motion to
dismiss, the district court distinguished between manufacturing
defects, where a specific product is uniquely defective because
of a mistake in the manufacturing process, and design defects,
where each and every product is defective, despite being
manufactured according to specifications, because the defect is
in the design of the product.  The district court determined that
in the case of this alleged design defect, proof or refutation of
the plaintiff's claim could be supported by evidence other than
the vehicle itself and that the defendant would not be unduly
prejudiced by the loss of the automobile.  The defendant appeals
the district court's refusal to dismiss the complaint.  We review
the district court's determination that dismissal was unwarranted
for abuse of discretion.  See United States v. Sherlock, 962 F.2d
1349, 1354 (9th Cir. 1989).
    "Under settled authority, the district court has inherent power
to exclude evidence that has been improperly altered or damaged
by a party where necessary to prevent the non-offending side from
suffering unfair prejudice."  See Sacromona v. Bridgestone/Firestone, Inc., 106 F.3d 444, 446 (1st Cir. 1997).  
In this case, however, the defendant only moved for dismissal and
not for a sanction restricting the evidence admitted.  As a
general principle, the court views "[d]ismissal with prejudice
'[as] a harsh sanction[,]' which runs counter to our 'strong
policy favoring the disposition of cases on the merits.'"
Benjamin v. Aroostook Med. Ctr., Inc., 57 F.3d 101, 107 (1st Cir.
1995) (citations omitted) (dismissal for failure to prosecute).
    The intended goals behind excluding evidence, or at the extreme,
dismissing a complaint, are to rectify any prejudice the non-
offending party may have suffered as a result of the loss of
evidence and to deter any future conduct, particularly deliberate
conduct, leading to such loss of evidence.  See Sacramona, 106
F.3d at 446.  Therefore, of particular importance when
considering the appropriateness of sanctions is the prejudice to
the non-offending party and the degree of fault of the offending
party.  See id. at 447.
    Here, the fact that the plaintiff asserted a design defect claim
and not a manufacturing defect claim is relevant to the degree of
prejudice the defendant experienced by the loss of the
automobile.  Clearly, if a product was manufactured defectively,
its defect is likely to be particular to the individual product.  
Consequently, a party's examination of that product may be
critical to ascertaining, among other things, the presence of the
defect.  In design defect cases, however, a party's examination
of the individual product at issue may be of lesser importance as
the design defect alleged can be seen in other samples of the
product.  Nevertheless, examination of the individual product in
question may still be of significant import in certain design
defect cases where, for example, the question whether the alleged
defect or some other factor caused a particular injury is at
issue.   
    In the case at hand, the defendant identified a number of issues
relevant to its defense that inspection of the vehicle may have
resolved.  However, evidence as to many of these issues could
also have been attained through other means, such as through the
testimony of the plaintiff and other persons involved in the
accident, through photographs of the car after the accident, and
through accident reconstruction.  The plaintiff neither
maliciously destroyed evidence nor deliberately attempted to
prevent the defendant from inspecting the vehicle.  Indeed, the
plaintiff's insurance company sold the car to a third party
without the plaintiff's knowledge or consent and the defendant
was given the name of the third party who purchased the vehicle.  
The defendant moved solely for dismissal, and under the
circumstances of this case, we cannot say that the district court
abused its discretion in refusing to dismiss the complaint.

                          Conclusion
    The court finds "any residuum of claimed errors to be without
merit and unworthy of extended discussion."  Rodrguez-Hernndezv. Miranda-Vlez, 132 F.3d 848, 860 (1st Cir. 1998).  Because the
district court and the jury acted properly within the limits of
their authority, the court affirms the outcome below.  Costs are
                   awarded to the appellee.
                                

</body>

</html>