# United States Court of Appeals
## For the First Circuit

No. 04-1262

DANIEL T. SMITH, Individually and as Executor of the ESTATE OF
NORA M. SMITH,

Plaintiff, Appellant,

v.

ROBERTSHAW CONTROLS COMPANY, AMERICAN WATER HEATER COMPANY, and
AMERIGAS PROPANE, L.P.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before
Boudin, Chief Judge,
Cyr, Senior Circuit Judge,
and Lipez, Circuit Judge.

Mark S. Bourbeau, with whom Bourbeau & Associates P.C. was on
brief, for appellant.
Michael W. Gallagher, with whom Andrea S. Batchelder and
Gallagher & Cavanaugh were on brief, for appellee Robertshaw
Controls Company.
Maynard M. Kirpalani, with whom Kathleen M. Colbert, Helen E.
Tsingos, and Wilson, Elser, Moskowitz, Edelman & Dicker LLP were on
brief, for appellee American Water Heater Company.
Frank W. Beckstein, III, with whom Catherine M. Costanzo and
Nelson, Kinder, Mosseau & Saturley, P.C. were on brief, for
appellee AmeriGas Propane, L.P.

May 27, 2005

**LIPEZ, <u>Circuit Judge</u>**.  This personal injury case stems from a horrific accident in which plaintiff-appellant Daniel Smith was badly burned while attempting to light a propane water heater in his basement, allegedly due to a faulty control valve.  Smith sued the company that made the control (Robertshaw Controls Company), the company that made the water heater (American Water Heater Company), and the company that supplied the gas (AmeriGas Propane).  The district court granted summary judgment to all three defendants.

We affirm summary judgment for both American Water Heater and Robertshaw on the basis that notice of the claim was unreasonably late and defendants were thereby prejudiced, contrary to the requirements of Massachusetts warranty law.  We affirm summary judgment for AmeriGas on the basis that it had no legal duty to Smith.

**I.**

**A.       Factual Background**

Because this case was resolved on summary judgment, we recite the facts in the light most favorable to the non-movant Smith, "drawing all reasonable inferences in his favor."  <u>Terry</u> v. <u>Bayer Corp.</u>, 145 F.3d 28, 30 (1st Cir. 1998).

1.     The Robertshaw Unitrol 110

In the early 1950s, Robertshaw learned of serious accidents caused by defects in the Unitrol 110 gas control valve

that it manufactured for use on propane water heaters. The problems related to an interlock mechanism, known as the "index plate," that was supposed to prevent the reset button from being depressed while the gas cock knob was turned. In 1957, Robertshaw implemented three changes -- a stronger reset button, a thicker index plate, and a new gas cock knob -- to fix these problems.

In 1974, Robertshaw notified the Consumer Product Safety Commission ("CPSC") of the defect, stating that it had been informed of one fatality and one non-fatal injury. In 1981, the CPSC concluded that Robertshaw had substantially understated the number of incidents; apparently Robertshaw had received 147 liability claims by 1974, including forty-eight deaths and eighty-nine serious injuries.

Robertshaw issued two recall notices under CPSC supervision, one in 1981 and another in 1984. Robertshaw estimated that approximately 1,000 defective controls were in use, primarily "on water heaters located in rural areas, such as . . . in vacation or weekend homes." A homeowner could determine if a control was defective by examining the date code on the bottom of the control. According to the recall notices, an alternate method to identify the defective controls was to examine the position of the index pointer relative to the word "PILOT" -- if it lay under the "T" it

was a pre-1957 defective model, and if it lay between the "L" and the "O," it was a post-1957 model not subject to the recall.[1]

2.    The Accident and Its Aftermath

On May 24, 1997, Daniel Smith descended to the basement of his Dennis, Massachusetts vacation cottage to light the pilot light of his liquid propane water heater. The heater had a Unitrol 110 gas control. While Smith was trying to light the pilot light, a fireball erupted from beneath the heater, engulfing and igniting his clothing and flesh. He somehow managed to exit the basement -- he suffered some memory loss as part of the accident -- and extinguish the fire by rolling on the lawn. Over forty percent of his body was burned. After a neighbor drove him to a local hospital, Smith was airlifted to Boston for more advanced treatment. At some point he slipped into a coma, and would remain comatose for three months. The Dennis Fire Department, Dennis Police, and Massachusetts State Police all investigated the fire and concluded that the fire originated at the water heater. The Fire Department took several photographs of the water heater.

Four days after the accident, AmeriGas sent an experienced service technician, Steven Lovell, to inspect the propane system. Smith's daughter, Maureen Howell, was present

---

[1]There were other, unrelated problems with the Unitrol 110. One problem involved accumulated sediment forcing the valve into the open position. That problem was fixed in the 1980s by a wire screen that would filter out sediment.

during Lovell's inspection. Determining that there was a small leak in the system, Lovell disconnected and capped off the gas line to the heater. He also "red tagged" the heater to indicate that it should not be used. On the red tag, in a space marked "Unsafe Conditions," he wrote, "Unitrol 110 gas valve is under recall list." He also prepared a work order that stated "Unitrol 110 gas valve on recall list." He told Howell that the valve had been recalled, and showed her an illustrated recall manual with a drawing of the valve and a note that it had been recalled.[2] After returning to AmeriGas, Lovell told his superiors that he wanted to return to the Smith home to reinspect the valve because it appeared to be subject to recall but he was not entirely sure. AmeriGas, however, did not send him back out to recheck the valve.

While Smith languished in a coma, Howell hired licensed gasfitter Ronald Hague to remove the water heater (which could no longer be used) and preserve it in case an insurance adjuster wished to examine it. Hague stored the heater at his yard. After about a year, a "scrap guy" who had come to clean the yard removed the heater, possibly mistaking it for junk, and presumably destroyed it.

Meanwhile, Smith eventually recovered from the coma, but still required extensive medical treatment and several more months

_____

[2]At his deposition three years later, Lovell claimed that, though he generally carried his recall manual with him, for some reason he didn't have it when he inspected Smith's heater.

of hospitalization.  Even after extensive surgery, he suffers severe and permanent disfiguring injuries.

**B.        Procedural History**

In May 2000, Smith filed suit against Robertshaw, American Water Heater, and AmeriGas in Massachusetts state court.[3] Defendants removed the case to federal court on the basis of diversity of citizenship.

The claims against Robertshaw and American Water Heater were based on strict products liability.  As interpreted by the district court, without objection, these were treated as claims of breach of the implied warranty of merchantability under the Uniform Commercial Code, Mass. Gen. Laws ch. 106, § 2-314.[4]  Smith did not plead negligence against Robertshaw or American Water Heater.

The claims against AmeriGas were founded on a different theory.  The complaint alleged that when AmeriGas sent a repairman in response to Smith's August 1995 service call concerning a problem unrelated to the water heater, it voluntarily assumed a duty to inspect the entire propane system, including the water heater, and to warn Smith of any defects.

---

[3]The complaint also named other defendants who are not parties to this appeal.

[4]Massachusetts does not recognize strict products liability in tort.  The district court noted that "the parties have treated the case as if it were pled properly under Massachusetts law to allege the recognized cause of action for breach of an implied warranty of merchantability under the Uniform Commercial Code," and therefore it did the same.  So do we.

Regrettably for Smith, the water heater and allegedly faulty valve had been lost. Nonetheless, the complaint alleged that Smith's Unitrol 110 control was of the same type that had been recalled, and was defective and unreasonably dangerous when manufactured. Robertshaw denied that Smith's control was subject to the recall. Without the actual valve, Smith had no direct evidence that it had been recalled. Instead, he only had photographs of the water heater that had been taken by the Dennis Fire Department.

Smith did hire an expert in propane fire investigation, David Cox, who could testify that the fire had originated from the base of the water heater, and that the gas that had ignited must have come through the main burner while the pilot light was out -- just the occurrence that the Unitrol 110 is supposed to prevent. However, even assuming there was a flaw in the gas valve, Smith could not prove directly that it was a manufacturing or design defect, rather than the result of poor maintenance or abuse.

Smith decided to pursue as his primary (but not sole) theory that the valve had the same defect as those subject to the recall.[5] He submitted a Freedom of Information Act request to the CPSC for documents from its investigations and the two recalls, but the CPSC responded that it had lost the relevant records. As part

---

[5]Alternate theories of causation included accumulated sediment forcing the valve into an open position. See supra note 1.

of the discovery process, Smith submitted a 116-item Request for Production of Documents ("RPD") to Robertshaw. Smith sought, inter alia, documents concerning any control of the same make and model as the control that was attached to Smith's water heater, and "any similar Robertshaw Controls."

Robertshaw, however, had concluded, from its examination of the fire department photographs, that Smith's control was produced between 1957 and 1960, and was not subject to the recall. It objected to all questions relating to the recall, and produced for deposition Steven Cropp, its Vice President of Quality, who testified that, based on the photographs, the control was not subject to the recall.

In June 2001, Smith moved to compel discovery, arguing that Robertshaw had unjustifiably avoided the discovery requests in the RPD, and that Cropp had been non-responsive to questions related to the recall. Robertshaw opposed the motion, arguing that Cropp had determined that Smith's control was not subject to the recall, and therefore discovery about the recall would be irrelevant. The district court agreed and denied the motion to compel.

Smith then retained William Kitzes, an expert in safety management and compliance with industry and government standards. Through Kitzes, Smith was able to obtain other records relating to

the recall, such as internal Robertshaw memoranda, that had been produced in other litigation.

After the close of expert discovery, defendants moved in limine to exclude certain expert testimony by Cox and Kitzes. Additionally, American Water Heater and AmeriGas -- but not Robertshaw -- moved for summary judgment.[6]

On December 31, 2003, the district court granted the motions to preclude Cox from testifying about "the existence of a defect in the mechanical design or manufacture of the Unitrol 110 gas control that was installed on the water heater in the plaintiff's house," because Cox was "not qualified by education, training, or experience to testify as an expert in mechanical design in general or in the mechanical design of such devices as the Unitrol 110 control in particular." However, it denied the motions insofar as they sought to prevent Cox from testifying, as a fire investigator, about the cause and origin of the fire. The court also granted AmeriGas's motion to exclude the testimony of Kitzes, on the grounds that Kitzes' testimony "depend[s] on proposed testimony by Mr. Cox that the Unitrol [110] control at issue was defective," and therefore, absent such testimony, was irrelevant.

---

[6]The record does not reveal why Robertshaw did not move for summary judgment at this time. At the omnibus motion hearing on December 18, 2003, Robertshaw's counsel began his argument by saying "I don't have a motion for summary judgment."

In the same order, the district court granted summary judgment for the two moving defendants, American Water Heater and AmeriGas. The judgment in favor of American Water Heater rested on two independent grounds. First, Smith had no expert who could competently testify that the valve was defective and unreasonably dangerous when sold; he had not adduced sufficient evidence to create a genuine dispute of material fact as to whether the control was subject to the recall; and he was not entitled to the inference of res ipsa loquitur because the accident was out of the common experience of a lay jury. Second, Smith had failed to provide prompt notice of his claim as required for claims of breach of warranty under Massachusetts law, and, because the heater had been destroyed in the interim, American Water Heater was prejudiced by the delay. As to AmeriGas, the court held that the company's response to a 1995 service call relating to a leak in Smith's back yard did not give rise to a duty to inspect the water heater.

On January 7, 2004, Robertshaw moved for summary judgment on the basis that, without expert testimony or evidence that the control was subject to the recall, Smith could not prevail on theories of negligence,[7] breach of warranty by selling a defective and unreasonably dangerous product, or res ipsa loquitur. That

_____

[7]As noted above, Smith had not actually pled a claim of negligence against Robertshaw. Nevertheless, Robertshaw's motion for summary judgment argued that "plaintiff cannot sustain his burden of proof on a theory of negligence."

same day, the district court granted Robertshaw's motion without further opinion. Smith timely appealed.

## II.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We review a district court's grant of summary judgment de novo. Uncle Henry's, Inc. v. Plaut Consulting Co., 399 F.3d 33, 41 (1st Cir. 2005). We are not limited to the district court's rationale, but rather may affirm "on any basis apparent in the record." Id.

We begin with the breach of warranty claims against American Water Heater, brought on Smith's own behalf and as a loss of consortium claim by his wife. As we have noted, Smith pled these as strict products liability claims and, technically, Massachusetts does not recognize strict products liability in tort. However, the Massachusetts "Legislature has transformed warranty liability into a remedy intended to be fully as comprehensive as the strict liability theory of recovery that has been adopted by a great many other jurisdictions." Back v. Wickes Corp., 378 N.E.2d 964, 968 (Mass. 1978); see also Swartz v. Gen. Motors Corp., 378 N.E.2d 61, 62 (Mass. 1978) ("[T]here is no 'strict liability in tort' apart from liability for breach of warranty under the Uniform

-11-

Commercial Code."). Hence, the parties and the district court treated the strict products liability claims as breach of warranty claims. See supra note 4.

Because of its UCC origins, warranty liability in Massachusetts contains certain technical requirements not found in strict tort liability. One such requirement is prompt notice. Under Massachusetts law, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Mass. Gen. Laws ch. 106, § 2-607(3)(a); Sacramona v. Bridgestone/Firestone, Inc., 106 F.3d 444, 448-49 (1st Cir. 1997) ("[A] plaintiff must give reasonably prompt notice of his warranty claim to the potential defendant. . . ."). This requirement serves to "inform the seller of a breach and thereby allow for settlement through negotiation." Delano Growers' Coop. Winery v. Supreme Wine Co., 473 N.E.2d 1066, 1072 (Mass. 1985). The "notice" need not take any particular form:

> The content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched. There is no reason to require that the notification which saves the buyer's rights under this section must include a clear statement of all the objections that will be relied on by the buyer . . . . Nor is there reason for requiring the notification to be a claim for damages or of any threatened litigation or other resort to a remedy. The notification which saves the buyer's rights under this Article need only be such as informs the seller that the transaction is claimed to involve a breach, and thus opens

-12-

the way for normal settlement through negotiation.

UCC Official Text with Comments (1962) ("UCC Comments") § 2-607, cmt. 4; see also, e.g., Delano Growers' Coop. Winery, 473 N.E.2d at 1072 (oral notice can suffice).

Whether notice is reasonably prompt "depends on the reasonableness of the buyer's behavior in the circumstances." Delano Growers' Coop. Winery, 473 N.E.2d at 1072-73; see also UCC Comments § 2-607, cmt. 4 ("'A reasonable time' for notification from a retail consumer is to be judged by different standards [than a merchant buyer] so that in his case it will be extended, for the rule of requiring notification is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy."). Compare P & F Constr. Corp. v. Friend Lumber Corp., 575 N.E.2d 61, 64 (Mass. App. Ct. 1991) (three and one-half months' delay in notice was unreasonable where doors delivered to construction job site were wrong size) with Goldstein v. G.D. Searle & Co., 378 N.E.2d 1083, 1088-89 (Ill. App. Ct. 1978) (four years' delay in notice was reasonable where consumer who used defendant's oral contraceptives suffered stroke, which may have reduced her ability to determine what caused the stroke).

Even if the notice is unreasonably late, however, "[f]ailure to give notice shall not bar recovery . . . unless the defendant proves that he was prejudiced thereby." Mass. Gen. Laws ch. 106, § 2-318. Unreasonably late notice and prejudice are

-13-

separate requirements, and both must be present in order for the defense to succeed.  If the notice was unreasonably late but there was no prejudice -- or if the defendant was prejudiced, but the timing of the notice was reasonable under the circumstances -- then the defense is ineffective and the plaintiff's claim survives.  But when the notice is unreasonably late <u>and</u> the defendant is prejudiced thereby, the claim is barred.  <u>See</u> <u>Sacramona</u>, 106 F.3d at 448-49 ("[A] plaintiff must give reasonably prompt notice of his warranty claim to the potential defendant; if he fails to do so, and the defendant is thereby prejudiced, the warranty claim is barred even if it is brought within the statute of limitations."); <u>Hayes</u> v. <u>Ariens Co.</u>, 462 N.E.2d 273, 275 n.2 (Mass. 1984) (same). Finally, while the late notice defense is a jury issue, summary judgment will be appropriate if "a reasonable jury would . . . have been compelled to find prejudice."  <u>Sacramona</u>, 106 F.3d at 449.

Smith's claim accrued on May 24, 1997.  The state court complaint was filed on May 22, 2000 -- almost three years later, and just days before the three-year statute of limitations was due to expire.  <u>See</u> Mass. Gen. Laws ch. 106, § 2-318 ("All actions under this section shall be commenced within three years next after the date the injury and damage occurs."); <u>Fine</u> v. <u>Huygens, DiMella, Shaffer & Assocs.</u>, 783 N.E.2d 842, 845-46 (Mass. App. Ct. 2003) (§ 2-318's three-year statute of limitations applies to warranty claims alleging physical injury).  Smith has not suggested that he

-14-

gave American Water Heater any notice of his claim other than the filing of the complaint. He does not argue that the notice was prompt, nor that the delay was excusable. Rather, he disputes only whether American Water Heater was prejudiced by the delay.

The loss of material evidence usually establishes prejudice:

> [A]ssuming an unreasonable delay in notice, the prejudice showing is relatively easy: it is enough that the delay may well have deprived the defense of useful evidence. No showing is required that lost evidence would inevitably have altered the outcome. . . . [T]o show prejudice based on a lack of notice, the defendants needed only to prove that evidence was lost that might well have helped them . . . .

Sacramona, 106 F.3d at 449; see also Castro v. Stanley Works, 864 F.2d 961, 964 (1st Cir. 1989) ("[P]rejudice may result when 'evidence which may reasonably have been developed by prompt investigation has been lost.'") (citation omitted). That is the case here. The water heater, including the potentially defective valve, was destroyed during a period when Smith could have given American Water Heater notice of his claim. As American Water Heater puts it, "for over one year after the accident, for over six months after Smith came out of his coma and close to two years before [American Water Heater] was given notice of this claim, the critical notice was available but the plaintiff failed to put [American Water Heater] on notice of his claim." If the evidence had not been destroyed, American Water Heater might have been able

-15-

to prove that the water heater, including the valve, was in good working order, or that it had been damaged by misuse since its sale some thirty or more years earlier. Its inability to do so, due to the lack of notice, is prejudicial.

Smith has three responses. First, he argues that he is just as prejudiced as American Water Heater because he cannot examine or make use of the water heater to prove his case either. Thus, he derives no unfair advantage. Second, the evidence was destroyed through no fault of either Smith or Howell, his daughter.[8] Third, it cannot be presumed that access to the evidence would have helped American Water Heater; it might well have hurt its case, e.g., if the control was clearly subject to the recall.

These points are all true but legally irrelevant. The question is simply whether the defendant was prejudiced by the lost evidence, not whether the plaintiff was also prejudiced, or who was prejudiced more, or whether the plaintiff (as opposed to some third party) was responsible for the loss. And the defendant need not show that the evidence could have helped it; it suffices that "the

---

[8]Indeed, Smith suggests that AmeriGas was somehow at fault for the loss of the evidence, because its employees did not record the identifying codes from the water heater and control valve nor preserve the physical evidence. This argument is misguided. AmeriGas is not the plaintiff in a warranty case, and had no duty to preserve evidence or give prompt notice to American Water Heater so that the latter could inspect the evidence before it was destroyed.

delay may well have deprived the defense of useful evidence." Sacramona, 106 F.3d at 449. American Water Heater was entitled to summary judgment because the notice was unreasonably late and the loss of evidence was prejudicial.

The late notice defense also provides a basis for affirming the district court's grant of summary judgment against Robertshaw.[9] Smith's claims against Robertshaw were also based exclusively on strict products liability, again interpreted by the district court to mean warranty liability. Since Smith claims that the Unitrol 110 control valve was defective, and the control valve has been lost, Robertshaw suffered the same prejudice as did American Water Heater from the loss of evidence during the unexcused delay. Therefore, we affirm summary judgment for

---

[9]Robertshaw did not raise this defense in its motion for summary judgment below or on appeal, and we could deem it waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). However, "in certain circumstances we have the discretion to overlook waiver by inadequate argument," United States v. Rodriguez-Marrero, 390 F.3d 1, 18 (1st Cir. 2004), cert. denied, 125 S. Ct. 1620 (2005), and this is such a case. First, Robertshaw pled late notice as an affirmative defense in its answer. Second, American Water Heater argued the late notice defense both at summary judgment and on appeal, stating arguments that apply equally to Robertshaw. Third, Smith had a full opportunity to respond to American Water Heater's late notice argument, and provided a reasoned (if unsuccessful) response to that argument. Fourth, the basis for affirming the district court's judgment for Robertshaw on the grounds of late notice is "apparent in the record." Uncle Henry's, 399 F.3d at 41.

Robertshaw on the basis of late notice resulting in prejudice by loss of evidence.[10]

## III.

We turn to the claims against AmeriGas. Smith claims that AmeriGas negligently failed to inspect his propane system and warn him of the alleged defect in the Unitrol 110 control. This claim fails because AmeriGas had no duty to inspect and warn.

Smith had no service agreement with AmeriGas. His contract was for propane delivery to an outside underground tank, not for service or safety inspections. In the thirty years preceding the accident, Smith had made only one request for service. In 1995, Smith called AmeriGas because he smelled leaking gas in his backyard. The company sent a licensed plumber/gasfitter, who found (and fixed) a corroded pipe at ground level outside the cottage. His contact with the water heater was minimal: since he had shut off the gas in order to fix the pipe, he re-lit the pilot light on the water heater after he turned the gas

---

[10]We therefore need not decide whether the district court abused its discretion in denying Smith's motion to compel discovery. We do note that it is rare for us to reverse such a decision. In such cases, "[t]he hurdle which the appellant must overcome to prevail is high. . . . 'We will intervene in such matters only upon a clear showing of manifest injustice, that is, where the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party.'" Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 244 F.3d 189, 191-92 (1st Cir. 2001) (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 186 (1st Cir. 1989)). That showing would be difficult on the facts of this case.

back on.  Smith did not ask him to inspect the water heater or any other aspect of his propane system.

Smith, however, notes that in the 1980s AmeriGas adopted a voluntary industry safety program called "GAS Check," about which Smith's proposed expert Kitzes was prepared to testify.  Smith argues that, by adopting GAS Check, AmeriGas voluntarily assumed a duty to inspect and warn, and because the repairman did not perform a GAS Check inspection, AmeriGas breached that duty.

"Massachusetts recognizes that 'a duty voluntarily assumed must be performed with due care,' and . . . [has] approved the principles pertaining to voluntary assumption of a duty as set forth in the Restatement (Second) of Torts § 323 (1965)."  Cottam v. CVS Pharmacy, 764 N.E.2d 814, 821-22 (Mass. 2002) (quoting Mullins v. Pine Manor Coll., 449 N.E.2d 331, 336 (Mass. 1983)).  The Restatement (Second) of Torts § 323 (1965) provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
> (b) the harm is suffered because of the other's reliance upon the undertaking.

We assume, arguendo, that if the repairman had conducted a GAS Check inspection of the propane system, he would have discovered a dangerous defect in the water heater.  Even so,

-19-

AmeriGas had no legally enforceable duty to conduct a GAS Check (or any other) inspection of the water heater. The repairman's failure to inspect the water heater may not have diminished a risk that could have been diminished, but it did not <u>increase</u> the risk of that harm. Nor could Smith have relied upon AmeriGas to conduct an inspection. He never asked AmeriGas to inspect the water heater, nor did AmeriGas represent that it would do so. Put simply, a service call to fix a gas leak in the backyard does not, without more, create a duty to inspect a water heater. The district court properly granted summary judgment to AmeriGas because it had no legal duty.

## IV.

The tragedy of Smith's accident was compounded by the inadvertent loss of virtually all material evidence a year later. Unfortunately for Smith, in these circumstances, Massachusetts law provides appellees Robertshaw and American Water Heater with a complete defense, and assigns no duty at all to appellee AmeriGas. The judgment of the district court is **<u>affirmed</u>**.

So ordered.