Victor **BERICOCHEA–CARTAGENA,**
et al., Plaintiffs,

v.

**SUZUKI MOTOR CO., LTD.,**
et al., Defendants.

Civil No. 93–2645(DRD).

United States District Court,
D. Puerto Rico.

March 31, 1998.

Alvaro R. Calderon, Jr., Hato Rey, PR, Ruben Colon–Morales, Aviles & Colon Morales, San Juan, PR, Harry R. Segarra–Arroyo, San Juan, PR, for Plaintiffs.

Karl E. Pearson, W. Scott Powell, Roth, Edwards & Smith, P.A., Orlando, FL, Diego A. Ramos–Cayon, Fiddler, Gonzalez & Rodriguez, San Juan, PR, Larry M. Roth, Roth, Edwards & Smith, P.A., Orlando, FL, for Defendants.

### OPINION AND ORDER

DOMINGUEZ, District Judge.

Plaintiffs filed the instant products liability action claiming that a family member lost his life due to a design defect in Defendants' product. Pending before the court are Defendants' Motion for Summary Judgment, (Docket No. 30), and Plaintiffs' opposition thereto, (Docket No. 38). Defendants argue that the court should dismiss the action on the grounds that Plaintiffs' expert witness testimony is inadmissible, that Plaintiffs permitted the spoliation of evidence and for want of prosecution. For the reasons stated below, the court denies Defendants' motion.

## I. Background

On December 10, 1992, Victor Bericochea, Jr. lost his life when the 1989 Suzuki Sidekick which he was driving rolled over and its roof collided with a tree, crushing him and another passenger. The driver and passenger of a second car witnessed the accident. When the police rescue unit arrived at the scene, officers sawed off the Sidekick's roof and moved the salvage in an unsuccessful attempt to free and save the passengers. Subsequently, a police photographer arrived and took pictures of the scene.

The police took possession of the salvage. Plaintiffs rejected the delivery of the vehicle because they did not want to be constantly reminded of their son's death and because Citicorp, the Sidekick's leasing company, had already settled with the insurance company. Hence, the vehicle remained in police custody until delivered to Citicorp's insurance company. Subsequently, Defendants failed in their attempts to find the salvage and, therefore, did not have an opportunity to examine it.

Shortly after the accident, Plaintiffs hired Arthur C. Damask, an expert on accident reconstruction, to prepare a report on the events. Even though he finished the report, Damask became very ill and became unavailable. Hence, Plaintiffs hired John Noettl, a certified accident reconstruction expert and President of Vehicle Support Systems, Inc., who issued a report finding that "the design of the 1989 Suzuki Sidekick and its lack of adequate warnings directly caused or contributed to the cause of this accident and the resulting injuries to the occupants." Noettl based his findings on the 1989 Suzuki Sidekick's short wheel base and its track's width in relation to its center of gravity height, both of which make this automobile model easily susceptible to rolling over. Further, Noettl found that this model lacked a complete roll cage, as well as an adequate roof structure.

## II. Summary Judgment Standard

■ The function of summary judgment is "to pierce the boilerplate of the pleadings and examine the parties' proof to determine whether a trial is actually necessary." *Vega–Rodríguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 178 (1st Cir.1997) (citing *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992)). A court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "To defeat a motion for summary judgment, the nonmoving party must demonstrate the existence of a trial worthy issue as to some material fact." *Cortés–Irizarry v. Corporación Insular*, 111 F.3d 184, 187 (1st Cir.1997). "In applying this formulation, a fact is 'material' if it potentially affects the outcome of the case", *Vega–Rodríguez*, 110 F.3d at 178, and "genuine" "if a reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Cortés–Irizarry*, 111 F.3d at 187. "Speculation and surmise, even when coupled with effervescent optimism that something definite will materialize further down the line, are impuissant in the face of a properly documented summary judgment motion. Moreover, even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Ayala–Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 95 (1st Cir.1996) (citations omitted).

## III. Discussion

### A. Expert's Qualification

■ Defendants argue that Noettl is not a qualified expert under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The court disagrees. Noettl received a degree in industrial engineering in 1959 and a masters degree in engineering and computer science in 1965, both from Washington University, where he has also taught part-time. He has performed accident investigations, recon-

structions, testing and research of hundreds of accidents involving many different commercial or passenger vehicles, trucks and industrial equipment. These include four cases that specifically involved the Suzuki Sidekick model. He has also rendered services and opinions for the National Highway Traffic Safety Administration ("NHTSA"), as well as for Congressional Committees.

As to the instant case, Noettle rendered reports, which he furnished to Defendants, stating that, in order to arrive at his findings, he reviewed the following: (1) photographs of the scene taken shortly after the accident; (2) photographs of the 1989 Suzuki Sidekick involved in the accident; (3) photographs of a second car allegedly involved in the accident; (4) Damask's June 6, 1993 report; (5) an August 2, 1988 American Suzuki Motor Corporation Voluntary Submission in Opposition to Petitions for a Defect Investigation of the Suzuki Samurai; (6) internal documents of Suzuki Motor Corporation concerning Suzuki vehicles; (7) April 18, 1973 General Motors's comments on the Advance Notice of Proposed Rule Making, Docket No. 73–10, Notice 1—Rollover Resistance; (8) April 18, 1973 Ford Motor Company's comments on the Advance Notice of Proposed Rule Making, Docket No. 73–10, Notice 1—Rollover Resistance; (9) a May 1991 Evaluation of Static Roll Over Propensity Measures DOT HS 807 747 Final Report with Appendix; (10) Measured Vehicle Inertial Parameters, NHTSA's Data Through September 1992; (11) the many single roll over accidents that he has investigated; and (12) basic engineering principles concerning vehicle stability in turns, as well as the principles concerning structural integrity and occupant protection.

Noettl has further stated that much of the information he reviewed had been previously provided by Defendants themselves through the means of discovery in previous cases involving the 1989 Suzuki Sidekick. In addition, he made it expressly clear that an expert did not require to inspect the specific automobile involved in the accident to reasonably arrive at conclusions with regard to design defects.

Based on his examinations and experience in this area, Noettl's expert testimony will be

that the 1989 Suzuki Sidekick contains a dangerous design defect which causes a tendency to roll over, that it lacks proper passenger protection such as a roll cage, that passengers are not duly warned of these risks and that these caused or contributed to the cause of the accident.

■ The court must first discern whether the *Daubert* test is even applicable to determine the admissibility of Noett's testimony. "Properly understood, the *Daubert* analysis applies to cases involving unique, untested, or controversial methodologies or techniques." *Liriano v. Hobart Corp.*, 949 F.Supp. 171, 177 (S.D.N.Y.1996) (citing *Compton v. Subaru of America, Inc.*, 82 F.3d 1513, 1518–19 (10th Cir.1996)). In *Compton*, a products liability action based on injuries from a rollover accident, the court held that the factors outlined in *Daubert* for determining admissibility of scientific testimony are applicable only when the proffered expert relies on some principle or methodology, but are unwarranted in cases where expert testimony is based solely on experience and training. *Compton*, 82 F.3d at 1518. In such cases, Rule 702 of the Federal Rules of Evidence merely requires the trial court to make a preliminary finding that the proffered expert testimony is both relevant and reliable, while taking into account that the inquiry envisioned is a flexible one. *Id.* at 1519. Hence, the court found that, since the expert reached his conclusions based upon general engineering principles and his 22 years of experience, *Daubert* simply had no bearing on his testimony. *Id.* Given the expert's experience, the appellate court was convinced that the district court fulfilled its responsibility under Rule 702 of finding that the expert possessed the basic qualifications to give helpful and relevant testimony, even though the district court had expressed reservations as to his credibility. *Id. See also Liriano*, 949 F.Supp. at 177 (finding that the expert's testimony was admissible without applying *Daubert* because his conclusion had not been predicated on untested scientific observations, but rather on personal experience or training).

■ In the instant case, as in the jurisprudence cited, Koettl's testimony will be based

on his experience and training in the field of automotive safety, subject for which he is qualified to testify. Further, also as in the cited cases, Koettl's testimony will be helpful to a jury and relevant to the issue of whether the alleged design defect directly caused or contributed to the cause of the accident. Moreover, even though the court must act as "gatekeeper" of expert testimony, this role is tempered by the liberal thrust of the Federal Rules of Evidence and the "presumption of admissibility." *Borawick v. Shay,* 68 F.3d 597, 610 (2d Cir.1995), *cert denied,* 517 U.S. 1229, 116 S.Ct. 1869, 134 L.Ed.2d 966 (1996). Therefore, the court finds that Koettl's testimony must be admissible and leaves its credibility to the trier of fact—the jury.

## B. Spoliation of Evidence

■ Defendants argue that Plaintiffs permitted the spoliation of the Sidekick's salvage, the most crucial piece of evidence necessary to determine all issues related to the alleged defect and to causation. Thus, argue Defendants, Plaintiffs cannot present a *prima facie* case and the court must dismiss this complaint. On the other hand, Plaintiffs clearly claim that the cause of the accident, at least in part, was a design defect which all 1989 Suzuki Sidekicks shared, not just a malfunction in Plaintiffs' Sidekick. Hence, argue Plaintiffs, the Sidekick's salvage is not necessary to prove the existence of a design defect or causation. The court agrees.

The Supreme Court of Puerto Rico has yet to decide the issue of spoliation in products liability cases where a plaintiff alleges a design defect. Yet, the Court of Appeals for the First Circuit has reiterated that, when Puerto Rico's highest court has not addressed an issue, "we look to 'analogous state court decisions, persuasive adjudications by courts of [the] states, learned treatises, and public policy considerations identified in state decisional law' in order to make an 'informed prophecy' of how the [Puerto Rico Supreme Court] would rule." *Pérez–Trujillo v. Volvo Car Corp.,* 137 F.3d 50 (1st Cir.1998) (citing *Rodríguez–Suris v. Montesinos,* 123 F.3d 10, 13 (1st Cir.1997) (brackets in original)). When asked to predict Puerto Rico's products liability doctrine, the First Circuit consults pertinent case law available in other jurisdictions that embrace the Restatement (Second) of Torts § 402A as Puerto Rico consistently does.

In *Collazo–Santiago v. Toyota Motor Corp.,* 937 F.Supp. 134 (D.P.R.1996) *cited with approval in Pérez–Trujillo v. Volvo Car Corp.,* 137 F.3d 50 (1st Cir.1998), another products liability case where the plaintiff alleged a design defect, the court predicted that Puerto Rico would adopt California law. In *Collazo–Santiago,* the defendant also argued that the plaintiff's insurance company had disposed of the salvage of the car whose airbags allegedly caused the injuries. The defendant filed a motion to dismiss based on the contention that the spoliation of the evidence deprived the defendant from an adequate defense. Since the claim was based on a design defect and not on a manufacturing defect, an inspection of the specific automobile and airbags was not required. *Id.* at 136. A design defect, by definition, would be found in the entire production run of the vehicle model in question. *Id.* "Because the lack of evidence as to the condition of plaintiff's car will not hamper the defendant's conduct of its case, the Court decides not to dismiss the complaint on this basis. *Soule v. General Motors Corp.,* 8 Cal.4th 548, 34 Cal. Rptr.2d 607, 882 P.2d 298, 303 (1994)." *Id.* As in *Collazo–Santiago,* the spoliation of the Sidekick will not hamper the defense in the instant case and, therefore, it is not a proper basis for dismissal.

Defendants argue, further, that Plaintiffs cannot prove causation without providing the Sidekick as evidence. However, Plaintiffs have provided direct and circumstantial evidence that make a *prima facie* showing of their case and a jury should determine its persuasiveness. They have provided expert testimony, as well as the testimony of two people who witnessed the accident from a second automobile. In addition, they have provided the police report, the police photographs of the vehicle and the victims at the scene, and the claim adjuster's report. From the totality of this evidence, a reasonable jury may or may not find that it was more probable than not that a design defect in the 1989 Suzuki Sidekick caused or contributed

to the cause of the accident in question. Therefore, summary judgment is unwarranted.

### C. Want of Prosecution

■ Defendants argue, lastly, that Plaintiffs are not ready to try the instant case and, therefore, that the court should dismiss the complaint pursuant to Local Rule 313.1(B). However, they base said argument on the fact that Plaintiffs had failed to file a certificate of readiness for trial, as well as on the same two grounds discussed above— Plaintiffs lack of a qualified expert and spoliation of the most crucial piece of evidence. First, the court finds that it was reasonable for Plaintiffs to take longer than a year to be ready for trial because the first expert which they retained became very ill and unavailable and because of discovery disputes. Second, the court has decided herein the expert testimony and spoliation issues and finds no need to recur upon them. Therefore, the court rejects Defendants' request of dismissal on these grounds.

### IV. Conclusion

Having viewed the record in the most favorable light to the nonmoving party, the court finds that genuine issues of material facts exist and, therefore, denies Defendants' Motion for Summary Judgment.

IT IS SO ORDERED.