**Karyn CHAPMAN, As Administratrix of the ESTATE OF Ashton CHAPMAN, Plaintiff,**

**v.**

**BERNARD'S INC., and Mattress Discounters, Defendants.**

**No. Civ.A. 97–40127–NMG.**

United States District Court, D. Massachusetts.

Sept. 20, 2001.

Douglas K. Sheff, Andrew M. Abraham, Boston, MA, for plaintiff.

Jack R. Pirozzolo, Christopher R. Goddu, Willcox, Pirozzolo & McCarthy, Boston, MA, Craig D. Murphy, Law Office of Donna Gully-Brown, Richard M. Welsh, Scannell and Salerno, Worcester, MA, for defendants.

## MEMORANDUM AND ORDER

GORTON, District Judge.

This case arises out of the death of Ashton Chapman, the son of plaintiff, Karyn Chapman ("Chapman") in a daybed allegedly manufactured by defendant Bernard's, Inc. ("Bernard's") and sold by defendant Mattress Discounters. Plaintiff filed the instant action as administratrix of the estate of her son, Ashton Chapman. Pending before this Court are Bernard's motions 1) for summary judgment (Docket No. 41), 2) to bifurcate trial (Docket No. 51), 3) to reopen discovery in order to

take discovery from Mattress Discounters (Docket No. 53), 4) to strike affidavits, expert reports and exhibits (Docket Nos. 67–71), and 5) for a hearing on the motions to strike (Docket No. 72).

### I. *Background*

In August or September of 1993, Chapman purchased a daybed ("the subject daybed") for her nine-year-old daughter, Ashley. She contends that the subject daybed was a Bernard's Model 467 daybed and that it was purchased at a Mattress Discounters in Shrewsbury, Massachusetts. Chapman's fifteen-month-old son, Ashton, slept in the same room with Ashley in his own bed but also routinely slept with Ashley in the subject daybed. On the morning of March 24, 1994, Chapman found Ashton wedged between the mattress and side rail of the subject daybed. He was dead.

The subject daybed was destroyed shortly after Ashton's death but before his funeral. Although testimony is conflicting, it appears that either Ashton's father, Leo LeFlamme, and uncle and/or Chapman's brother, Kevin Stelmach, broke up the subject daybed and took the remnants to a dump.

Approximately six months after Ashton's death, Chapman purchased what she contends is a Bernard's Model 467 daybed ("the exemplar daybed") from the Mattress Discounters store in Framingham, Massachusetts. The exemplar daybed has been examined by experts for both parties.

Chapman filed the instant suit against Bernard's and Mattress Discounters in state court in early 1997. She asserted claims against Bernard's for: 1) negligence, 2) breach of warranty, 3) breach of the implied warranty of merchantability, 4) wrongful death, and 5) conscious pain and suffering. Defendants removed the case to this Court on June 27, 1997 on diversity grounds. Mattress Discounters settled with Chapman in the Fall of 2000 and although it is no longer a party to this action, it remains a named party because this Court determined that separate entry of judgment is not appropriate under Fed. R.Civ.P. 54(b).

### II. *Motion for Summary Judgment*

#### A. Summary Judgment Standard

■ The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir. 1991) (*quoting Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists only where the party opposing summary judgment provides evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir.1993). If after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists, summary judgment is appropriate.

Bernard's argues that it is entitled to summary judgment on several grounds. This Court considers each ground *seriatim.*

### B. Product Identity

Bernard's contends that summary judgment is appropriate because Chapman cannot establish that it distributed the subject daybed. Chapman responds that the subject daybed must have been a Bernard's Model 467 because that was the only model daybed similar in shape to the subject daybed which Mattress Discounters sold during the relevant period.

■ "A threshold requirement in any products liability action is the identification of the injury-causing product and its manufacturer." *Santiago v. Sherwin–Williams Co.,* 782 F.Supp. 186, 188 (D.Mass.1992) (*citing Payton v. Abbott Labs.,* 386 Mass. 540, 571, 437 N.E.2d 171 (1982)). Accordingly, summary judgment for the defendant is appropriate if a plaintiff cannot establish who or what caused his injury. *Id.* (*citing Garside v. Osco Drug, Inc.,* 895 F.2d 46, 49 (1st Cir.1990)).

It is obvious that proof of product identity in this case will be difficult. Nonetheless, plaintiff has provided sufficient evidence to create a genuine issue of material fact with respect to product identity and thereby clear the summary judgment hurdle.

■ Plaintiff has offered evidence that the subject daybed was purchased at a Mattress Discounters in the Worcester, Massachusetts area. Chapman did not buy the subject daybed herself. Instead, she sent her foster daughter, Tammy Kiefer on an errand with Tammy's friend, David Howe. Kiefer testified that they went to a Mattress Discounters on Route 9

while Howe testified that they went to a Mattress Discounters off Gold Star Boulevard (presumably in Worcester). Bernard's points out the inconsistency in the two stories and claims that there has never been a Mattress Discounters at the location identified by Howe. Moreover, Bernard's notes that Chapman has no receipt or other paperwork with which to prove that the subject daybed was indeed bought at Mattress Discounters.

The testimony about the events surrounding the purchase of the subject daybed is inconsistent but both Kiefer and Howe testified that they went to a Mattress Discounters. Bernard's admits that a Mattress Discounters was located on Route 9 in Shrewsbury, Massachusetts during the relevant period. Accordingly, a reasonable jury could infer that the subject daybed was indeed purchased at Mattress Discounters.

Next, Chapman argues that the subject daybed must have been a Bernard's Model 467 if it was purchased at Mattress Discounters. A representative of Bernard's, Dale Ward, testified at his deposition that it was his understanding that Mattress Discounters had essentially commissioned the Model 467 by asking Bernard's to manufacture a knock off of a more expensive daybed. Mattress Discounters' Rule 30(b)(6) representative, Ray Bojanowski, testified that, in 1993 and 1994, the only daybed similar in appearance to photos of the subject daybed that Mattress Discounters carried was the Model 467. Based on that testimony and a comparison of police photographs of the subject daybed to the exemplar daybed itself (if the latter is proven to be a Model 467) and photographs of a Model 467, a jury could conclude that the subject daybed was a Bernard's Model 467.[1]

---

**1.** Identity of the exemplar daybed is also a disputed issue of material fact in this case. A

Bernard's points out that its Vice President, Jeffrey Friedman, examined police photographs of the subject daybed taken shortly after Ashton's death and concluded that the subject daybed differs from the Model 467 in many respects and therefore could not have been a Bernard's daybed. Chapman, however, has marshaled evidence to rebut several of the supposed distinctions and reduced others to questions of semantics. In any event, Friedman's testimony is not alone dispositive of the product identity issue, especially in light of the contradictory evidence offered against it.

### C. Spoliation of the Subject Daybed

Because the subject daybed was destroyed, either by LaFlamme or Chapman's brother, Bernard's argues that the police photographs of the subject daybed, expert reports based on examinations of those photographs and the exemplar daybed itself should all be excluded from evidence as a sanction for spoliation.

■ Although this Court's jurisdiction over the instant suit is based on diversity, federal, rather than state, law governs the spoliation issue. *Townsend v. American Insulated Panel Co.*, 174 F.R.D. 1, 4 (D.Mass.1997). District courts have inherent power to exclude evidence that has been improperly altered or damaged by a party where necessary to protect the non-offending party from undue prejudice. *Sacramona v. Bridgestone/Firestone, Inc.*, 106 F.3d 444, 446 (1st Cir.1997). Factors to be considered in determining whether to exclude evidence as a sanction for spoliation include:

1) whether the adverse party was prejudiced by the destruction of evidence;

2) whether the prejudice can be cured;

3) the practical importance of the evidence;

4) whether the destruction was in good or bad faith, and

5) the potential for abuse if the evidence is not excluded or the party is not otherwise sanctioned.

*McGuire v. Acufex Microsurgical, Inc.*, 175 F.R.D. 149, 156 (D.Mass.1997).

■ The importance of the subject daybed to this case may be overstated. First, this is an action for design defect, rather than manufacturing defect. Chapman alleges that all Model 467s, not just the subject daybed itself, were defective. Access to the subject daybed is thus less important because only the design is at issue. The jury can look at examples of the spoliated product and police photographs thereof and consider expert testimony in order to determine whether a design defect exists. *See, e.g., Collazo–Santiago v. Toyota Motor Corp.*, 149 F.3d 23, 29 (1st Cir.1998); *Bericochea–Cartagena v. Suzuki Motor Co.*, 7 F.Supp.2d 109, 113 (D.P.R.1998); *Headley v. Chrysler Motor Corp.*, 141 F.R.D. 362, 366 n. 18 (D.Mass.1991). Moreover, although absence of the subject daybed raises serious questions regarding product identity, other evidence with respect to product identity exists and may also be considered.

Furthermore, this Court finds no compelling evidence of bad faith or potential for abuse which would warrant the harsh sanction of excluding evidence. The evidence thus far suggests that the subject daybed was destroyed in the heat of the moment as a reaction to Ashton Chap-

Bernard's officer has examined the exemplar daybed and was unable to identify it as a Model 467. Chapman, however, has produced what she says is a receipt for the ex-

emplar daybed which bears her name, address and signature and on which the words "467 DAY BED" are clearly written.

man's death, not as part of a calculated plan to eliminate evidence so as to prejudice Bernard's. Indeed, Chapman has testified that she did not consider litigation against Bernard's until two years after Ashton's death.

This Court concludes that, on balance, the degree of prejudice suffered by Bernard's does not warrant excluding evidence from this case. It is clear that Bernard's has suffered substantial prejudice. For example, spoliation has made it more difficult: 1) to prove that the subject daybed was not a Model 467, 2) to examine the interrelationship of the various components of the subject daybed, some of which apparently were not distributed by Bernard's, 3) to show abuse of the subject daybed by Chapman, or 4) to reconstruct the accident. Nevertheless other evidence including expert testimony, police reports and police photographs, testimony from Mattress Discounter's Rule 30(b)(6) designee and testimony from those involved in the purchase of the subject daybed, can be considered by a jury in the absence of the daybed itself. See Bericochea–Cartagena, 7 F.Supp.2d at 113 (denying motion to dismiss based on spoliation in design defect case where other evidence was sufficient to offset prejudice).

The motion for summary judgment due to spoliation of the subject daybed will, therefore, be denied. This Court's ruling does not, however, effect the strong possibility that Bernard's may be entitled to a negative inference jury instruction at trial. See McLaughlin v. Denharco, Inc., 129 F.Supp.2d 32, 36 (D.Me.2001).

### D. Count I: Negligence

■ Chapman alleges that Bernard's negligently 1) designed, advertised, sold and distributed the subject daybed, 2) failed to warn consumers of the dangers associated with the subject daybed, and 3) placed the subject daybed into channels of trade.

Bernard's contends that it is entitled to summary judgment because Chapman was contributorily negligent in letting Ashton sleep in a daybed that was not designed for toddlers. Under the Massachusetts comparative negligence statute, M.G.L. c. 231, § 85, Chapman would recover nothing on her negligence claim if she were found to be more than 50% negligent. Because apportionment of negligence under that statute is traditionally for the jury, the motion for summary judgment with respect to Count I will be denied.

### E. Count II: Breach of Warranty

■ Count II alleges, in part, that Bernard's breached an express warranty that the subject daybed was safe, merchantable and fit for its intended use and purpose. Because Chapman has failed to produce any evidence of an express warranty regarding the subject daybed, defendant's motion for summary judgment with respect to that portion of Count II will be allowed. To the extent that Count II alleges breach of the implied warranty of merchantability, it will be dismissed as duplicative of Count III which addresses that alleged breach in more detail.

### F. Count III: Implied Warranty of Merchantability

Chapman alleges that Bernard's breached the implied warranty of merchantability by selling a daybed that was a danger to small children and by failing to warn her of dangers inherent in the subject daybed's defective design.

■ "[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." M.G.L. c. 106, § 2–314. Massachusetts

warranty liability substitutes for the principle of strict liability employed in other jurisdictions. *Back v. Wickes Corp.*, 375 Mass. 633, 639–40, 378 N.E.2d 964 (1978). A breach of the warranty of merchantability can occur if either the product is defectively designed or foreseeable users are not adequately warned. *Wasylow v. Glock, Inc.*, 975 F.Supp. 370, 377 (D.Mass. 1996).

Bernard's seeks summary judgment on the implied warranty claim on the ground that it did not receive timely notice of that claim or, in the alternative, that there is no genuine issue of material fact with respect to the elements thereof.

### 1. *Notice*

■ Massachusetts law embodies a notice requirement for warranty claims. A plaintiff must give reasonably prompt notice of her warranty claim to a potential defendant. If she fails to do so and the defendant is thereby prejudiced, the warranty claim is barred even if it is brought within the statute of limitations period. *Sacramona*, 106 F.3d at 448–49 (1st Cir. 1997). To demonstrate prejudice based on lack of notice, a defendant need only prove that potentially useful evidence was lost due to plaintiff's delay; no showing is required that the lost evidence would inevitably have altered the outcome of the case. *Id.* at 449. In other words, prejudice may occur where evidence which may reasonably have been developed by prompt investigation has been lost. *Castro v. Stanley Works*, 864 F.2d 961, 964 (1st Cir.1989). Although Massachusetts law treats the notice defense as a jury issue, summary judgment is appropriate where a reasonable jury would be compelled to find prejudice. *See, e.g., Sacramona*, 106 F.3d at 449 (affirming summary judgment in favor of defendant on warranty claim because the alleged defective product and other

materials might have been salvaged had plaintiff given notice earlier than three years after the accident at issue).

Bernard's contends that the breach of warranty claim is barred under *Sacramona* because Chapman failed to give prompt notice and it was prejudiced thereby. Bernard's asserts that had it received prompt notice, it could have retrieved the subject daybed from the dump or, at least, preserved an exemplar Model 467.

■ This Court is not convinced by defendant's argument because genuine issues of material fact exist as to both the timeliness of notice and the degree of prejudice to Bernard's. Approximately three years elapsed between Ashton's death on March 3, 1994 and the filing of Chapman's complaint in state court in March, 1997, a period equivalent to that deemed unreasonable in *Sacramona*. *Id.* at 446. There is evidence, however, that Chapman's attorney mailed Bernard's a notice of claim for wrongful death more than six months earlier. Although that letter did not mention any claim for breach of warranty, it was at least some form of notice of an impending lawsuit likely to be based on a products liability theory. Chapman has also testified that she did not immediately pursue a lawsuit against Bernard's following Ashton's death because she was first focused on convincing the Consumer Products Safety Commission ("CPSC") to take the subject daybed off the market. The jury is entitled to determine when Bernard's first had notice of Chapman's warranty claims as well as the reasonableness of the delay before notice was given.

With respect to prejudice, it is not clear that prompt notice would have permitted Bernard's to retrieve the subject daybed because it was destroyed almost immediately after Ashton's death. It is unknown how long the destroyed subject daybed remained at the dump or how helpful it

would have been if found and thus there is no way to determine when notice would or would not have been helpful to Bernard's.

Bernard's also claims prejudice because, at the time it was notified, it no longer carried the Model 467 and therefore could not obtain an exemplar daybed. Bernard's Vice President testified that Bernard's does not currently have a Model 467 in its possession because it discontinued that model in 1995 and, according to company policy, would not have retained any Model 467s into the 1996 calendar year. There is certainly potential for prejudice here, but such prejudice can be cured if the exemplar daybed offered by Chapman is indeed proven to be a Model 467.

### 2. *Defective Design and Failure to Warn*

■ To prove defective design under a breach of warranty theory, Chapman must prove that the subject daybed was not fit for ordinary purposes because of a defect that made it unreasonably dangerous. *Wasylow*, 975 F.Supp. at 379. The "ordinary purposes" contemplated by M.G.L. c. 106, § 2–314 include both those uses which the manufacturer intended and those which are reasonably foreseeable. *Back*, 375 Mass. at 640, 378 N.E.2d 964. Accordingly, to prove breach of warranty based on defective design, a plaintiff must prove that "at the time of his injury he was using the product in a manner that the defendant seller, manufacturer, or distributor reasonably could have foreseen." *Allen v. Chance Mfg. Co.*, 398 Mass. 32, 34, 494 N.E.2d 1324 (1986).

■ Apart from a plaintiff's burden to prove reasonably foreseeable use from the manufacturer's perspective, the manufacturer has an affirmative defense of unreasonable use by the plaintiff. "When a user unreasonably proceeds to use a product which he knows to be dangerous, he ... relinquishes the protection of the law...." *Correia v. Firestone Tire & Rubber Co.*, 388 Mass. 342, 355, 446 N.E.2d 1033 (1983). A defendant claiming unreasonable use must prove that the plaintiff knew of the product's defect and its danger, that she proceeded voluntarily and unreasonably to use the product, and she was injured as a result. *Allen*, 398 Mass. at 34, 494 N.E.2d 1324. Whether the manufacturer could have foreseen such misuse is irrelevant. *Id.* at 35, 494 N.E.2d 1324.

Bernard's lists six flaws in plaintiff's claim for breach of warranty based on defective design: 1) failure of plaintiff to prove foreseeable use, 2) the affirmative defense of unreasonable misuse, 3) no proof of proximate cause, 4) no proof of unreasonably dangerous design, 5) substantial changes to the subject daybed caused by prior abuse, and 6) no duty to warn because the gap between the mattress and the side rail of the subject daybed (allegedly created by a design defect) was or should have been obvious to Chapman.

■ Because genuine issues of material fact exist with respect to those elements of plaintiff's claim of defective design, the motion for summary judgment will be denied. In short, this Court finds that 1) there is some evidence that Bernard's knew people were using daybeds for very young children and thus should have foreseen Chapman's use, 2) Bernard's has not proved that Chapman was aware of, yet proceeded to ignore, a specific defect in the subject daybed, 3) Bernard's has not proved that Chapman's alleged negligence was an intervening cause of Ashton's death, 4) Chapman has offered expert testimony regarding the alleged design defects in the subject daybed, 5) any evidence of substantial changes in the subject daybed such as prior abuse is, at best, inconclusive, and 6) the evidence does not

clearly establish that the gap between the mattress and the side rails of the subject daybed existed prior to the moment when Chapman found Ashton trapped therein such that it can be characterized as an obvious defect.

### III. *Motion to Bifurcate Trial*

As an alternative to summary judgment, Bernard's seeks a separate trial pursuant to Fed.R.Civ.P. 42(b) on the issue of product identity, i.e. whether the subject daybed was a Bernard's daybed.

Rule 42(b) provides, in pertinent part:

The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim ... or of any separate issue ... or issues, always preserving inviolate the right of trial by jury....

 "A Rule 42(b) motion is a matter peculiarly within the discretion of the trial court...." *Gonzalez–Marin v. Equitable Life Assur. Soc'y*, 845 F.2d 1140, 1145 (1st Cir.1988). The Advisory Committee note to Rule 42(b) states that "[w]hile separation of issues for trial is not to be routinely ordered, it is important that it be encouraged where experience has demonstrated its worth." For example, a separate trial may be appropriate to avoid prejudice or where a single issue could be dispositive of the entire case. 9 Wright & Miller, *Federal Practice & Procedure: Civ.2d*, § 2388 (1995). The moving party bears the burden of proving that separate trials are justified. *Maldonado Cordero v. AT & T*, 190 F.R.D. 26, 29 (D.P.R.1999).

 Because Bernard's has satisfied that burden, the motion to bifurcate will be allowed to the extent that the same jury will decide the issue of product identity before reaching, if necessary, the issues of liability and damages. Product identity is outcome determinative. If Chapman cannot prove that the subject daybed is a Bernard's daybed, then the liability and damages phases of this case need not be tried. Contrary to Chapman's assertion, the identity of the subject daybed is by no means certain and, in fact, she has offered barely enough evidence to survive summary judgment on that issue. Moreover, a product identity trial is likely to be short. Those advantages are not outweighed by the possibility that the same witnesses may have to testify at both trials. And, by bifurcating the trial but retaining the same jury to hear both phases, if necessary, the cost of calling out-of-state witnesses twice and empaneling two juries will be eliminated.

In allowing bifurcation, this Court rules that Ashton Chapman's death will not be kept from the jury in the product identity phase. That fact is not unduly prejudicial to defendant; any prejudice can be overcome with a limiting instruction to the jury regarding sympathy and by redacting any photographs that contain images of the deceased. On the other hand, Chapman would be highly prejudiced if she were prevented from arguing to the jury in the first phase of the case that the subject daybed was destroyed not in order to hide evidence damaging to her case, but simply out of anger over Ashton's death. Additionally, the plaintiff is hereby forewarned that during the first phase of the case she will also be required to prove that the exemplar daybed is a Bernard's Model 467. If she fails to do so, this Court may, *inter alia*, prohibit the exemplar daybed from being introduced into evidence to assist in identifying the subject daybed and may strike expert testimony based upon examination of the exemplar daybed.

### IV. *Motions to Strike*

Bernard's seeks to strike several affidavits submitted by Chapman for failure to

satisfy the requirements of Fed.R.Civ.P. 56(e) which provides that affidavits offered in support of a motion for summary judgment

shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

### A. Portions of Affidavit of Karyn Chapman and Related Exhibits

Bernard's moves to strike several paragraphs of Chapman's affidavit and certain related exhibits. This Court considers Bernard's objections in sequence.

#### 1. *Hearsay*

 In paragraph 16 of her affidavit, Chapman testifies that, sometime after Ashton's death, she went to Mattress Discounters where she described the subject daybed to a salesperson who told her that the daybed was made by Bernard's. Bernard's contends that the salesman's statement is hearsay. Chapman responds that the statement is being offered only to show when and how she first learned of Bernard's existence. Even so, that statement would not be admissible because, under Fed.R.Evid. 403, its probative value is substantially outweighed by the unfair prejudice it would cause. There is a substantial danger that it would be interpreted as some evidence that the subject daybed was a Model 467. Paragraph 16 will, therefore, be stricken.

 In paragraph 17 of her affidavit, Chapman mentions that she has a receipt for the exemplar bed, a copy of which is attached as Exhibit 24 to plaintiff's opposition to the motion for summary judgment. Bernard's contends that the receipt is hearsay and that any reference to it in Chapman's affidavit must be stricken.

Chapman responds that 1) the receipt falls under the business records exception to the hearsay rule, Fed.R.Evid. 803(6), because Mattress Discounters keeps receipts in the usual course of business, and 2) she intends to call on the Keeper of Records of Mattress Discounters at trial to authenticate and lay the proper foundation for the receipt.

Although Chapman has not yet provided an affidavit of such Keeper of Records, it is anticipated that she will be able to satisfy Rule 803(6) at trial and the motion to strike with respect to paragraph 17 will be denied. Chapman is forewarned, however, that the exemplar daybed and any testimony based upon the inspection thereof will not be admitted into evidence if she fails to lay the proper foundation for the receipt at the product identity phase of trial.

 In paragraph 8 of her affidavit, Chapman testifies:

In deciding what Ashton's next bed should be, I consulted Dr. Daley, Ashton's pediatrician. After our discussion, I decided, on Dr. Daley's advice, to purchase a[sic] toddler race car bed.

The phrase "on Dr. Daley's advice" is simply a veiled attempt to offer Dr. Daley's recommendation to Chapman that she buy a toddler bed for Ashton and it will, therefore, be stricken as hearsay.

#### 2. *Contradiction of Deposition*

 Bernard's contends that portions of Chapman's affidavit must be stricken because they contradict her earlier deposition testimony. This Court disagrees. The allegedly contradictory portions of the affidavit will not be stricken.

In her deposition, Chapman testified regarding the unpacking and assembly of the subject daybed. She repeatedly referred to "a box" and stated that the bed came in "one box". In her affidavit, Chapman tes-

tified that the subject daybed came in one box which contained two smaller packages (one long, one short) taped together. Presumably the long package contained the back of the daybed and the short packaged contained the side rails.

Chapman also testified at her deposition that the "knobs" (i.e. finials) of the subject daybed were different in color from those of the exemplar daybed and that those on the subject daybed were probably white. She further testified that the finials on one of the beds may have had a brass-colored band. In her later affidavit, Chapman stated that the subject daybed had white finials which sat on top of a gold ring.

The First Circuit Court of Appeals has held that

> [w]hen an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed.

*Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4–5 (1st Cir.1994). Chapman's affidavit does not, however, contradict her deposition. With respect to the packaging of the subject daybed, she testified, in both instances, that the subject daybed came in one box. The additional reference in her affidavit to two packages within the single exterior box merely provides further detail.

Chapman's testimony is also arguably consistent with respect to the finials of the subject daybed. In both cases she testified that the finials on the subject daybed were white, although at her deposition, when testifying from memory alone, she was unable to testify with certainty. Similarly, in her deposition she mentioned a brass-colored band and in her affidavit she stated that the finial had a gold ring. Chapman's deposition testimony is some-

what ambiguous and her affidavit, apparently based on a review of photographs of the subject daybed, simply clarifies that ambiguity without being contradictory. Bernard's alternative argument that any testimony based on a review of those photographs must be stricken due to spoliation of the subject daybed is unavailing in light of this Court's ruling on the spoliation issue.

### 3. Notice Letter

In paragraph 17 of her affidavit, Chapman mentions the receipt for the exemplar daybed but cites to the wrong exhibit number, Exhibit 23. The receipt is attached to Chapman's opposition to the motion for summary judgment as Exhibit 24. Exhibit 23 is a letter to Bernard's, dated May 13, 1993, from attorney Henry Lawrence Perry, which informs Bernard's of an impending lawsuit regarding Destiny Roberts, a child who died when she became entrapped between the side bars of Bernard's Model 529 daybed. Despite that typographical error, Bernard's seeks to strike paragraph 17 on the grounds that the letter constitutes hearsay, is irrelevant as involving third parties and is lacking in foundation.

Because Chapman's affidavit does not actually reference the letter, the motion to strike paragraph 17 will be denied. In any event, if Chapman lays the proper foundation, the letter will be admissible on the issue of notice. Chapman claims that she intends to use the letter only to establish the date on which Bernard's first had notice that its daybeds might not be safe for toddlers. Determination of when Bernard's knew that consumers were using its daybeds for young children is central to the foreseeable use element of plaintiff's claim for breach of the implied warranty of merchantability. To that extent the letter

is relevant and does not constitute hearsay.

## B. Expert Report and Affidavit of Dr. Henry Poydar

 Plaintiff has submitted a "Preliminary Engineering Report" of Dr. Henry Poydar. In that report, Dr. Poydar concludes that Bernard's knew or should have known that the space between the spindles on the side rails of the subject daybed was excessively large and would allow a child's head to fit through and that Bernard's could easily have solved the problem by adding more spindles or filling the space between the spindles. He also concludes that Bernard's knew or should have known that the fastening system used to join the link springs to the side rails was defective because the thin tubular side rails to which the link springs were bolted could not withstand the forces exerted on those bolts. He claims that such forces caused the joints between the link springs and side rails to loosen and form a dangerous gap and that Bernard's could easily have solved the problem by strengthening the tubular side rails. Chapman has also submitted an affidavit in which Dr. Poydar further describes the scientific methodology underlying his report.

Bernard's seeks to strike both the report and the affidavit on several grounds: 1) Dr. Poydar's qualifications have not been provided, 2) the report is conclusory (i.e. lacking in citations or footnotes), 3) Dr. Poydar has failed to demonstrate the reliability of the "photogrammetric techniques" he allegedly used, 4) any testimony related to examination of photos of the subject daybed should be stricken due to its spoliation, and 5) any testimony related to examination of the exemplar daybed should be stricken because the exemplar is not relevant to determine whether the subject daybed was defective.

Because this Court has ruled that it will not, at this stage, exclude evidence due to spoliation of the subject daybed, Bernard's spoliation argument is disregarded. So too is its relevance argument. However, should Chapman fail to prove, at the product identity phase of case, that the exemplar daybed is indeed a Model 467, this Court will strike any expert testimony based on examination thereof.

Bernard's remaining arguments go the admissibility of expert testimony under Fed.R.Evid. 702 which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

 As rule 702 makes clear, expert testimony is admissible only if it is both relevant and reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–49, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). A district court's determination of admissibility is entitled to great deference, subject only to "abuse of discretion" review. *General Electric Co. v. Joiner*, 522 U.S. 136, 141, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997).

Dr. Poydar is qualified to testify in this case with respect to the application of basic engineering principles to the structure and design of a daybed as well as the approximate cost of any changes that might be made to that design/structure. He is a registered professional engineer with bachelor's and master's degrees in civil engineering and a Ph.D. in mechanical

engineering. He has been a professor of engineering at two colleges and an independent engineering consultant for approximately thirty years.

This district court has shown some wariness of "all-purpose" engineers, *see, e.g., American Computer Innovators, Inc. v. Electronic Data Sys., Corp.,* 74 F.Supp.2d 64, 69 (D.Mass.1999) (noting that expert, whose testimony was admissible, had experience "in the very area in question" and was not the "all-purpose engineer"), and nothing in Dr. Poydar's resume qualifies him as an expert on the engineering of daybeds, cribs, baby furniture or even furniture in general. Nonetheless, this Court finds that his general engineering expertise is sufficient because the design defect at issue turns on the interaction of metal tubes, bolts, springs and various stresses thereon which seems to this Court to be the subject of basic engineering expertise. In a second affidavit, Dr. Poydar asserts that the design defect at issue is governed by basic principles of physics and engineering. He also states therein that he has previously testified in federal court regarding the stress exerted on bolt holes in thin-walled metal tubes such as those used in the side rails of the subject daybed.

 Dr. Poydar is not qualified, however, to state conclusions of law because such conclusions do not "assist the trier of fact" as required by Rule 702. *Nieves–Villanueva v. Soto–Rivera,* 133 F.3d 92, 100 (1st Cir.1997) (expert testimony containing legal conclusions cannot properly assist the trier of fact). The first full paragraph on page 9 of the report, the paragraph beginning on page 9 and flowing onto page 10 and the first full paragraph on page 10 contain such conclusions and will, therefore, be stricken. *See, e.g., Carballo Rodriguez v. Clark Equip. Co.,* 147 F.Supp.2d 81, 85 (D.P.R. 2001) (striking legal conclusions from report of mechanical engineering expert).

 Next, this Court finds that Dr. Poydar's proffered opinion may be considered by the jury. He based that opinion on the following documents: 1) various depositions, 2) Ashton's death certificate, 3) Ashton's autopsy report, 4) CPSC reports, 5) certain engineering standards, 6) the exemplar daybed, 7) photocopies of the subject daybed and other Bernard's daybeds, and 8) police photographs and photocopies of photographs.

Dr. Poydar used "computer aided engineering and photogrammetric techniques" to derive measurements for the subject daybed from photographs thereof. Bernard's complains that photogrammetry is an unreliable, unknown scientific technique. In his second affidavit, Dr. Poydar testifies that photogrammetry is the application of mathematics to the study of photographs and that it is generally accepted in the field of science, engineering, technology and law enforcement as a reliable means to gather data from photographs. Dr. Poydar has taught photogrammetry and testified in court regarding measurements derived through the use of photogrammetry. The application of mathematics to photographs to derive measurements appears reasonable and does not strike this Court as "junk science". He will, therefore, be permitted to testify about its application to this case.

Dr. Poydar's report is conclusory at best, but that failing goes more to the weight that should be afforded to his testimony, which may be challenged on cross-examination, rather than to its admissibility. Accordingly, the motion to strike the report of Dr. Poydar, with the exception of aforementioned paragraphs containing legal conclusions, will be denied.

### C. Expert Report and Affidavit of Shelly Waters Deppa

Plaintiff has submitted an expert report from Shelly Waters Deppa ("Deppa"), a human factors psychologist. Deppa concludes that the Model 467 was defective and unreasonably dangerous due to the size of the openings between the mattress and side rails coupled with the size of the openings between the spindles which created a hazardous entrapment area which, in turn, was not foreseeable to consumers but should have been foreseeable to Bernard's. Plaintiff has also offered an affidavit in which Deppa testifies that the exemplar daybed, which Chapman shipped to her for examination, did not come in a standard box because it was a floor model. She also states that she unpacked and assembled the exemplar but did not perform any destructive testing on before shipping it to Chapman's attorney.

Bernard's objects to the report and affidavit on several grounds: 1) spoliation of the subject daybed, 2) lack of relevance of the exemplar daybed, 3) insufficiency of the affidavit under Fed.R.Civ.P. 56(e) and Fed.R.Evid. 702, 4) lack of relevance of certain standards not applicable to daybeds, and 5) unreliability of Deppa's "photo-scaling" technique.

■ All but one of those objections merit little discussion. This Court has already ruled that spoliation of the subject daybed does not warrant excluding expert testimony and that the exemplar daybed is relevant provided that, at trial, Chapman proves it is a Model 467. The motion to strike on those grounds will, therefore, be denied. Bernard's motion to strike with respect to Deppa's affidavit will also be denied because Bernard's offers absolutely no explanation of how or why it is insufficient. Finally, this Court finds that Deppa's "photo-scaling" technique is sufficiently reliable. Photo-scaling, which appears to be simply another name for photogrammetry (i.e. the technique used by Dr. Poydar), is a means for deriving measurements from photographs and Deppa has submitted a second affidavit and supplement to her report explaining in detail her technique and its application to this case.

■ Bernard's relevancy argument, however, warrants more attention. In her report, Deppa provides a time line of documents that she has reviewed, including federal regulations governing baby cribs and guidelines for toddler beds and bunk beds published by various consumer safety organizations including the CPSC. Bernard's contends that Deppa's report is irrelevant because crib, toddler bed and bunk bed standards cannot be imposed on daybeds. Indeed, Bernard's notes that it would be impossible to manufacture a daybed to crib specifications because a crib must be fully enclosed while a daybed, by definition, is open on one side.

■ This Court agrees that Bernard's cannot be required to conform with industry standards that are not applicable to daybeds. Indeed, even nonconformance with current, applicable industry standards does not compel a finding that the product at issue in a design defect case is unreasonably dangerous. *Touch*, 43 F.3d at 758. Nevertheless, even though Deppa's use of crib, bunk bed and toddler bed standards is somewhat misleading, she generally refers to those standards simply as a model of how Bernard's could have made its daybeds safer for use by young children. Chapman claims that Bernard's should have known that consumers might buy its daybeds for use by toddlers even though they were not designed for toddlers and thus argues that Bernard's had a duty to use that knowledge to make their daybeds safe for such a foreseeable, though unintended, use. A marginal argument can be

made that crib, bunk bed and toddler bed standards might be useful in making such design alterations. Thus, if Chapman establishes that use by toddlers of Bernard's daybeds was foreseeable, crib, bunk bed and toddler bed standards might be relevant. The motion to strike portions of Deppa's report based on analysis of those standards will, therefore, be denied.

### D. Affidavits of Mary Small and Deborah Berryman

■ Plaintiff has submitted the affidavit of Mary Small ("Small"), a friend of Chapman during the relevant period. Small testified that in July, 1993, she bought a daybed, which she later "learned" was a Model 467, from Mattress Discounters in Shrewsbury, Massachusetts. She claims that a Mattress Discounters salesmen told her the daybed was suitable for her daughter, that it had no warning labels or age limits and that she had no reason to believe it was not safe for her daughter. At some point, Small recommended the daybed to Chapman. She further testified that 1) both her daybed and the daybed purchased by Chapman were of poor quality and prone to fall apart, and 2) Ashton Chapman slept in a Tyco race car bed which was "perfect" for him because he could climb out of a crib and hurt himself.

Bernard's objects to the affidavit on several grounds including hearsay and lack of relevance. Although Small's testimony has potential relevance on the issue of product identity, it is rampant hearsay that cannot stand. Moreover, Small has not established 1) the basis for her contention that her daybed was a Model 467, 2) that, even if Chapman and Small both purchased Model 467s, those beds were equipped with the same link springs and connectors, or 3) that she is an expert on children's beds. The total lack of such

foundation renders Small's affidavit inadmissible and it will be stricken.

Bernard's raises similar objections to the affidavit of Deborah Berryman ("Berryman"), who lived in the same apartment complex with Small. Berryman testifies that she bought a daybed from Mattress Discounters which she later "learned" was a Model 467. She claims, as does Small, that a Mattress Discounters salesman told her that the daybed was suitable for use by her then five-year-old son and that the components of her daybed loosened over time. She also testifies that, shortly after Ashton Chapman's death, she spoke with a CPSC investigator about her dissatisfaction with her daybed and that the resulting CPSC report mischaracterized her statements.

In short, the Berryman affidavit suffers the same failings evident in Small's affidavit. Furthermore, it contains references to an irrelevant, post-accident CPSC investigation with respect to which the parties have submitted no documentation. Accordingly, Berryman's affidavit will be stricken.

### ORDER

For the reasons set forth in the Memorandum above:

1) Defendant's motion for summary judgment (Docket No. 41) is, with respect to Count III (breach of warranty), ALLOWED, and, with respect to all other counts, DENIED.

2) Defendant's motion to bifurcate trial (Docket No. 51) is ALLOWED; the issues of product identity and liability/damages will be tried separately to the same jury;

3) Defendant's motion to reopen discovery in order to take discovery from Mattress Discounters (Docket No. 53) is ALLOWED in that defendant may

424

depose a representative thereof, at a place convenient to Mattress Discounters, with respect to store locations and product identity issues;

4) Defendant's motion to strike affidavit of Karyn Chapman and related exhibits (Docket No. 67) is ALLOWED, in that the words "on Dr. Daley's advice" in paragraph 8 and all of paragraph 16 are stricken, and is otherwise DENIED;

5) Defendant's motion to strike expert report and affidavit of Shelly Waters Deppa (Docket No. 68) is DENIED;

6) Defendant's motion to strike expert report and affidavit of Dr. Henry Poydar (Docket No. 69) is ALLOWED, in that the first full paragraph on page 9, the overflow paragraph onto page 10, and the first full paragraph on page 10 are stricken, and is otherwise DENIED;

7) Defendant's motion to strike affidavit of Deborah Berryman (Docket No. 70) is ALLOWED;

8) Defendant's motion to strike affidavit of Mary Small (Docket No. 71) is ALLOWED; and

9) Defendant's request for a hearing on motions to strike (Docket No. 72) is DENIED.

So ordered.